CLOVER CREST STOCK FARM, INC., Respondent, v. THE NEW YORK CENTRAL MUTUAL FIRE INSURANCE COMPANY, Appellant, Impleaded with WATKINS STATE BANK, Defendant.

CLOVER CREST STOCK FARM, INC., Respondent, v. THE ONEIDA CO-OPERATIVE FIRE INSURANCE ASSOCIATION, Appellant, Impleaded with WATKINS STATE BANK, Defendant.

Fourth Department, December 5, 1919.

**Insurance — actions to recover on policies of fire insurance — defense that fire was incendiary — evidence raising question for jury — erroneous charge — evidence — best evidence.**

Actions brought by a corporation on two policies of fire insurance issued by the defendants on farm produce located on the plaintiff's farm, the defense being that the policies were procured pursuant to a scheme to defraud

the defendants and other insurance companies; that the insurance was excessive, and that the fire which had consumed the property was intentionally started by the husband of the person owning practically all of the stock of the corporation, who had full management of its affairs. Evidence examined, and *held*, to require the court to submit to the jury the question as to whether the fire had been set by the plaintiff, and that it was error to instruct the jury, in response to a request of the counsel for the plaintiff, and after the main charge was concluded, that there was no proof that the plaintiff burned the buildings and the produce therein. The error in refusing to submit the question aforesaid to the jury was prejudicial, although the court had charged in substance that if the jury found there was fraud in the inception of the contract, or false swearing in connection with the proof of loss, the plaintiff could not recover and also left it to the jury to determine whether there was any farm produce in the buildings at the time of the fire.

*It seems*, that it was error for the court to exclude evidence as to the ownership of the stock of the plaintiff upon the ground that the stock book or certificates were the best evidence, and to exclude proof as to the amount of the insurance policies obtained before the fire upon the ground that the policies were the best evidence, and to exclude evidence showing the ownership of the real estate itself upon the ground that the conveyances were the best evidence, for the evidence offered was directed to collateral matters.

APPEAL in the first action by the defendant, The New York Central Mutual Fire Insurance Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Steuben on the 22d day of November, 1918, upon the verdict of a jury for $500, and also from an order entered in said clerk's office on the same day, denying defendant's motion for a new trial made upon the minutes.

Appeal in the second action by the defendant, The Oneida Co-operative Fire Insurance Association, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Steuben on the 22d day of November, 1918, upon the verdict of a jury for $500, and also from an order entered in said clerk's office on the same day, denying defendant's motion for a new trial made upon the minutes.

*Thomas F. Rogers*, for the appellants.

*James O. Sebring*, for the respondent.

550 Clover Crest Stock Farm, Inc., v. N. Y. C. M. F. Ins. Co.

Fourth Department, December, 1919.          [Vol. 189.

De Angelis, J.:

One of these two actions was brought by the plaintiff against the New York Central Mutual Fire Insurance Company to recover a fire loss, and the other action was brought by the plaintiff against the Oneida Co-operative Fire Insurance Association to recover a fire loss arising from the same fire. They were tried together. The policies upon which the actions were based were the same in form and covered the same property, to wit, farm produce located on the plaintiff's farm. Each policy insured the property in the sum of $500. The pleadings in the two cases were identical with the exception of slight differences in dates not material here and of the difference in the names of the insurance companies. The Watkins State Bank as mortgagee was made a party defendant in each action but it did not plead and does not appear on these appeals.

The answers set up various alleged defenses all of which were waived upon the trial except that the plaintiff, in pursuance of a scheme to cheat and defraud the defendant insurance companies and other insurance companies, procured excessive insurance upon its property and then set or caused to be set the fire that consumed the same. Although such alleged defense was not pleaded, the trial court submitted to the jury the question of false swearing in connection with the proofs of loss.

The appellants did not plead that they could only be required to pay their proportionate shares of the loss upon the ground that the property insured was of less value than that for which it was insured in all the insurance companies.

The plaintiff is a domestic corporation organized in the summer of 1914 with a capital stock of $25,000 divided into 250 shares of $100 each. At the time of the fire losses all of the stock of the corporation but two shares appears to have belonged to the wife of one Charles S. Fisher and she was at that time the president of the corporation. The record does not disclose who the directors of the corporation were nor does it show to whom the other two shares belonged. Charles S. Fisher was the manager of the corporation at the time of the fire. He was president of the corporation for a time and attended to its finances from its organization down to the

time of the trial.  He acquired the 248 shares of the stock in the autumn of 1914 and held it for about a year.  He claims that he held it for his wife.  Then it was transferred to James O. Sebring who held it for about six months when he transferred it to one Hess who held it about a year and then transferred it to Fisher's wife who held it down to the time of the trial.  Fisher owned the farm upon which the property burned was located before it was transferred to the plaintiff.

Fisher's control, management and manipulation of the plaintiff and its property was such that whatever he did and said in connection with and in reference to the property and affairs of the corporation were the acts and the words of the corporation.

The plaintiff owned a farm situated in the town of Big Flats in the county of Chemung on the highway leading from Horseheads to the village of Big Flats.  The record does not disclose its size.  On this farm there were six buildings, to wit, a frame house, an old horse barn, a big barn, a tool shed, a cow barn and a milk house.  In addition there were a lime house and an ice house.  The building to which I have referred as the big barn is described by Fisher as the " big barn " and " the big horse barn and the grain barn combined," and by Fordham as the " main barn " or " horse barn."  It had been a tobacco shed with a pitched roof and sidings of boards placed perpendicularly.  The plaintiff placed a novelty siding over the plain board siding and put a new gambrel roof on the building.  It constructed two floors in the building, part of the ground floor of cement where there were five or six box stalls and the remainder of wood where there was a granary, and then there was the ordinary barn floor above. The building was eighty feet long and twenty-eight feet wide.  The house was forty or fifty feet square with two stories in the front and a cellar beneath and in the rear it was one story and had no cellar.  There had been a new roof put upon the house.  The milk house or creamery was a new building, connected with the cow barn by a covered passage.  The tool shed was a new building sixty feet in length covered on one side and both ends.  Fisher testified that it cost $800.

552 CLOVER CREST STOCK FARM, INC., *v.* N. Y. C. M. F. INS. CO.

Fourth Department, December, 1919. [Vol. 189.

At the time of the fire there were fire insurance policies held by the plaintiff upon the buildings on the farm, including the policies upon which these actions were brought issued by the insurance companies named and described in the following: Farmers' Reliance Mutual Fire Insurance Company, dated August 12, 1914, insures from August 7, 1914, to August 7, 1919, in the sum of $3,100; $800 on dwelling, $500 on carriage house, $500 on horse barn, $500 on produce, $800 on tobacco shed, $800 on stripping room and $500 on cattle, horses, etc. (There seems to be some mistake here because the sums distributed exceed the amount of the insurance.)

Wyoming Valley Fire Insurance Company, dated November 19, 1914, insures for three years in the sum of $2,375; $500 on dwelling house, $750 on cow barn, $500 on tobacco barn, $250 on horse barn, and $375 on stock.

Otsego Mutual Fire Insurance Company, dated November 21, 1914, insures from November 17, 1914, to November 17, 1917, in the sum of $1,187.50; $250 on residence, $375 on cow barn, $250 on tobacco barn, $125 on horse barn and $187.50 on livestock.

Chemical Mutual Fire Insurance Company, dated November 21, 1914, insures from November 17, 1914, to November 17, 1917, in the sum of $1,187.50; $250 on residence, $375 on cow barn, $250 on tobacco barn, $125 on horse barn and $187.50 on stock.

Fidelity Co-operative Fire Insurance Company, dated October 19, 1915, insures from October 18, 1915, to October 18, 1918, in the sum of $2,200; $1,000 on barn No. 1 (tobacco barn), $500 on vehicles, harnesses, etc., $500 on farming machinery and $200 on new shed.

Pacific Fire Insurance Company, dated March 7, 1916, insures from March 7, 1916, to March 7, 1919, in the sum of $4,650; $200 on residence, $300 on frame barn No. 1 (tobacco barn), $1,000 on farm produce and feed therein, $200 on frame barn No. 2 (tool barn), $200 on frame barn No. 3 (horse barn), $200 on produce therein, $50 on storage shed, $800 on farming tools, $200 on vehicles and wagons, $200 on milk bottling house, $450 on machinery and equipment therein, $550 on horses and $300 on cows.

Tompkins County Co-operative Fire Insurance Company, dated July 11, 1916, insures from July 11, 1916, to November 17, 1917, in the sum of $1,200; $1,000 on two-story milk and cream house and $200 on equipment therein.

The New York Central Mutual Fire Insurance Company, dated July 13, 1916, insures from July 11, 1916, to November 17, 1917, in the sum of $500 on farm barn and farm produce and feed while in barn No. 2.

Oneida Co-operative Fire Insurance Association of New York, dated July 14, 1916, insures from July 14, 1916, to November 17, 1916, in the sum of $500 on farm barn and farm produce and feed while in barn No. 2.

So that the entire insurance on this farm produce destroyed was $2,000.

In the early hours of Tuesday morning, September 19, 1916, a fire occurred which consumed the house and big barn and its contents, the new shed or tool shed and a stack of wheat straw. As claimed by the plaintiff there were in the big barn red kidney beans in the pod, containing 500 bushels of beans, when shelled, worth $7 or $8 per bushel, that is, $3,500 or $4,000, and 20 tons of bean pods worth $7 per ton, that is, $140; buckwheat in the straw which when threshed would yield from 264 to 300 bushels of buckwheat worth $1.20 per bushel, that is, $316.80 or $360, and 12 tons of straw worth $7 per ton, that is, $84; oats in the straw which would yield 600 bushels of oats worth 80 cents per bushel, that is, $480 and 12 tons of straw worth $8 per ton, that is, $96. This makes a total loss of not more than $5,160, nor less than $4,616. The plaintiff called witnesses to establish these quantities and prices. The beans and buckwheat were the crops of 1915 but the oats were the crop of 1916.

There was quite convincing evidence that the fire was of incendiary origin and that the preparation therefor was somewhat elaborate. At the time of the fire there was no person in the house or any of the buildings and there was no livestock in any of the buildings. The plaintiff had no cows on the farm. The horses, thirteen in number, had been taken to the Horseheads Fair under the supervision of Fisher on Monday, the day before the morning of the fire. After going part way with the horses toward the fair, Fisher returned

to the farm and, so far as the evidence shows, was the last person there before the fire. He lived at Watkins and had gone to the farm on Monday by trolley to Horseheads and thence by a hired conveyance to the farm. On a former occasion one of the buildings on the farm had burned and the plaintiff had collected $1,900 insurance. In the spring of 1916 Fisher sought to borrow $15,000 from White & Son in Syracuse giving the farm property and a policy of insurance upon his life for $30,000, obtained for the purpose, as security for the loan. He also sought to borrow through one Paine $10,000 on the property of the plaintiff and in connection therewith got straight insurance on the property in the sum of $12,000 with the idea of canceling the other insurance. In this connection he offered to pay $500 as bonus for the proposed loan. He also applied to the Ithaca Trust Company and also to the Rochester Savings Bank for loans on the farm, securing large insurance in connection therewith. But all his efforts failed and the insurance policies were canceled. He went into bankruptcy in June, 1916.

There was evidence introduced on the part of the appellant tending to show that there were no beans or buckwheat in the big barn at the time of the fire and that at that time the buildings burned were insured for much more than they were worth.

I think that the evidence was sufficient to have justified the trial court in submitting to the jury the square question whether or not the fire that consumed the property insured was set by the plaintiff. However, at the conclusion of the body of the charge and upon the request of the counsel for the plaintiff, the learned trial court charged the jury that there was no proof in the case that the plaintiff burned the buildings and produce, to which ruling the appellants duly excepted. The trial court had, in the body of his charge, stated the following: " It is claimed by the insurance companies that there was a fraud in the inception of the contract, that the Clover Crest Stock Farm conceived the idea of insuring this property and then having it destroyed and collecting the insurance. That presents a question of fact for you under the evidence.  *  *  *  If you should find there was fraud in the inception of the contract, or false swearing in connection

with the proofs of loss, the plaintiff is not entitled to recover in either action. If you find there was no fraud, then you come down to the other question, as to whether this property was actually destroyed. * * * Was there in this barn at the time of the fire the farm produce and feed which was insured under these policies? "

This is substantially all that was said by the court upon the vital question in the case and I am of opinion that the ruling adverted to, taking place after this charge, deprived the appellants of their main defense to the actions.

The rulings of the trial court sustaining objections interposed by the plaintiff to the introduction of testimony of Fisher to show ownership of the stock of the plaintiff on the ground that the stock book or the certificates of stock were the best evidence, to show the amounts of the insurance policies obtained by Fisher a short time before the fire on the ground that the policies were the best evidence and to show the ownership of the real estate upon the ground that the conveyances were the best evidence, were clearly erroneous because addressed to collateral matters, but we need not pass upon the question whether or not these rulings were harmful to the appellants in view of the fact that other evidence of the matters got into the record to a considerable extent and in view of the error already pointed out.

It follows from the foregoing that the judgments and orders appealed from must be reversed and a new trial granted, with costs to the appellants to abide the event.

All concurred

In each case judgment and order reversed and new trial granted, with costs to appellants to abide the event.