CHERYLAN REED et al., Respondents, v FEDERAL INSURANCE CO. et al., Appellants.

Second Department, January 12, 1987

### APPEARANCES OF COUNSEL

*Bouck, Holloway, Kiernan & Casey (Francis J. Holloway* and *Thomas J. O'Connor* of counsel), for appellants.

*Weg, Myers & Jacobson, P. C. (Frank A. Weg* of counsel), for respondents.

### OPINION OF THE COURT

EIBER, J.

On March 13, 1979, certain premises located on Market Lane in Clinton Corners, New York, and owned by the plaintiff Cherylan Reed, were destroyed by a fire which had been intentionally set or procured by Cherylan's father, the coplaintiff, Russell Reed. At issue on this appeal, is whether Cherylan, the named insured under the homeowners insurance policies issued by the defendants, is precluded from recovering for the property loss to the insured premises, by virtue of the acts committed by her father. There being no ground to set aside the jury's determination that Cherylan Reed was innocent of any complicity in the acts perpetrated by her father, we conclude that she is, therefore, contractually entitled, pursuant to the terms of said policies, to recover the proceeds for the losses sustained.

The Clinton Corners home was originally purchased in the name of the Universal Gym Equipment Corporation, in which the plaintiffs were shareholders, in late 1976. Title to the premises was then placed in the name of Russell Reed and his wife, as tenants by the entirety, and thereafter was transferred to International Credilogical Corporation, a corporation of which Cherylan Reed served as president. On February 15, 1978, the dwelling and most of its contents were conveyed to Cherylan, who was then approximately 19 years of age, in her individual capacity. The Reed family continued to occupy the Clinton Corners home until its destruction by fire, approximately one year later.

At the time of the loss, the subject premises were insured under a standard homeowners insurance policy that had been issued by the defendant Federal Insurance Company (hereinafter Federal). This policy provided coverage, *inter alia,* for fire loss or damage to the premises to a maximum of $234,000 as well as damage to the contents of the dwelling, to a maximum of $117,000. The policy further insured the beneficiaries thereunder for living expenses of up to $46,800. In effect at the time of the fire was a similar policy issued by the defendant

Hartford Insurance Company (hereinafter Hartford), which insured the premises for property loss in the aggregate amount of $174,000 plus an additional $23,200 for living expenses. Cherylan and her father were named as insureds under both of these policies, which also contained a "standard mortgagee clause" in favor of the codefendant Dutchess Bank and Trust Company, the mortgagee of the premises.

Once notified of the fire, the appellants, suspecting that it was the result of arson committed or procured by Russell Reed, disclaimed liability against their insureds. However, in accordance with the foregoing mortgagee clause, the defendants remitted the sum of $186,893.41 to the mortgagee bank and received in return an assignment of the mortgage.

Upon the refusal of either Federal or Hartford to make any additional payments on the policies, the plaintiffs commenced the instant action to recover the insurance moneys, to which they claimed entitlement. Demanded in the complaint are the proceeds referred to in the building-loss provisions, the contents-loss provisions, as well as the clause permitting recovery for additional living expenses.

In a joint answer, the appellants alleged, *inter alia,* that the plaintiffs had knowingly caused an increase in the risk of fire so that coverage was excluded under the terms of the policy, that they had made fraudulent statements in their proofs of loss and examinations under oath, and that they had attempted to conceal the cause and origin of the fire. The defendants further requested in their answer that the sum of $186,893.41, which had previously been remitted to the mortgagee bank, be considered an "offset" against any recovery had by the plaintiffs.

With the issues thus framed by the pleadings, the case proceeded to trial. During the course of her testimony, Cherylan Reed disclosed, *inter alia,* that shortly after she took title to the premises, she received a notification of delinquency by the mortgagee bank. She further revealed that her father, who normally handled the family's finances, had incurred several debts which, at the time of the conveyance, remained unsatisfied. Cherylan was also aware that prior to the fire, the bank had commenced or was in the process of commencing foreclosure proceedings.

As it developed at trial, the original mortgage was issued by either Russell Reed, or one of the various corporations which he controlled. Mr. Reed initially defaulted on the mortgage

payments in April of 1977, and, in October of that year, the bank threatened to foreclose on the property. Thereafter, in March of 1978, the mortgagee bank permitted Cherylan to take title to the premises, subject to the bank's mortgage. Although subsequent payments were tendered to and accepted by the bank, later in the spring of 1978, the mortgage became delinquent and the bank again threatened to foreclose.*

It is worthy of note that, at the time of the trial, coplaintiff Russell Reed was on parole, after having served 30 months in Federal prison, upon his conviction of various securities and mail fraud offenses. Moreover, at that point in time, there were also apparently 12 unsatisfied judgments which had been docketed against him in Westchester County, as well as 17 outstanding judgments which had been entered against him in Nassau County, totaling over $150,000. Mr. Reed, it appears, was also substantially indebted to various other lending institutions as well as the Internal Revenue Service, and was aware that foreclosure was imminent at the time of the transfer of the property to Cherylan. Although Mr. Reed had decided to sell the premises in question and in furtherance thereof had listed the house with a real estate broker, marketable title to the premises could not have been conveyed by virtue of the numerous judgments and liens which had been docketed against the property.

It was further proved at trial that Russell Reed had procured the subject homeowners policies less than two months before the fire. However, because Mr. Reed had failed to pay the down payment and first premium on either policy, notices of cancellation were issued by each of the defendants. These cancellations, however, did not become effective until after the date of the fire.

Finally, it was established at the trial, through expert testimony, that the fire in question was of an incendiary origin. This conclusion was based, in part, upon the rapidity

---

* Although not directly in issue, it appears that upon receiving their assignment of the mortgage, the appellants subsequently foreclosed on the subject premises and, at the foreclosure sale, bid the sum of $219,911.58, the amount purportedly owed under the mortgage note. The appellants subsequently moved for a deficiency judgment, claiming that the amount of their bid exceeded the fair market value of the premises, which was alleged to have been $45,000. By order dated May 14, 1982, the court (Kessler, J.) denied the motion for a deficiency judgment, holding that RPAPL 1371 did not authorize such relief and that the appellants voluntarily bid the sum of $219,911.58 and were, therefore, estopped from challenging their judgment in so doing. The appellants apparently never appealed from this order.

with which the fire spread, coupled with the facts that the chimney flues had been left open and that the building had collapsed within 15 to 20 minutes after the fire was first reported.

Although Russell Reed was never accused of or indicted for arson in connection with the fire at his daughter's home on March 13, 1979, the jury, in its answers to special interrogatories, found (1) that the fire was incendiary, (2) that Cherylan did not cause or procure the fire, (3) that Russell Reed did cause or procure the fire and, finally, (4) that Russell Reed's actions were not done with the knowledge and consent of Cherylan Reed. The jury further found that the cash value of the damage to the building was $186,000 and that the damage to Cherylan Reed's personal property amounted to $3,440. The jury concluded, however, that there were no additional living expenses incurred by Cherylan.

Subsequent to the rendition of the verdict, the appellants moved, *inter alia,* for an order granting them an offset of $186,893.40 against the amount of the judgment. They argued that because they had paid the foregoing sum to the mortgagee bank, pursuant to the terms of the policies, they became subrogated to the bank's interest as mortgagee and were entitled to the offset as a matter of law. The appellants further maintained that the denial of their application for a setoff would be tantamount to granting Cherylan Reed a double recovery.

In a decision and order dated December 2, 1983, the court denied their posttrial motion. It found that inasmuch as the appellants had elected to commence foreclosure proceedings in their capacity as assignees of the mortgage, and, at the foreclosure sale, had bid in the full amount of the mortgage debt, the appellants, as a consequence, "became the legal and equitable owners of the property, thereby discharging the mortgage and cancelling the lien * * * upon any insurance proceeds payable".

Judgment for $189,440 plus interest was then entered in favor of Cherylan Reed.

On appeal to this court, the appellants contend that the misconduct of Russell Reed must be imputed to his daughter Cherylan, so as to bar her from recovering under the homeowners policies. The appellants allege that Cherylan was merely the nominal owner of the property and that the technicalities of title should be cast aside in order to ensure that Russell Reed does not benefit from his own misconduct.

The issue of whether a jointly insured party is precluded from recovering the proceeds under a contract of insurance, where the insured property has been intentionally destroyed as a result of acts of the coinsured, has been addressed in several jurisdictions. The majority of these jurisdictions have adhered to a more "traditional analysis", which focuses on "the interests and obligations arising from the nature of the ownership of the insured property" (see, *Krupp v Aetna Life & Cas. Co.,* 103 AD2d 252, 257). The courts which have employed this approach have denied coverage to the innocent coinsured where the property is jointly owned or there is a joint obligation on the part of the owners to save and preserve the property (see, *Home Ins. Co. v Pugh,* 51 Ala App 373, 286 So 2d 49; *Federal Ins. Co. v Wong,* 137 F Supp 232; *Kosior v Continental Ins. Co.,* 299 Mass 601, 13 NE2d 423; *Monaghan v Agricultural Fire Ins. Co.,* 53 Mich 238, 18 NW 797; *see generally, Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned by Another Insured,* Ann., 11 ALR4th 1228).

The manifest inequities inherent in such a rule, particularly where the coinsured is truly innocent, have led an increasing number of courts to adopt an approach which focuses on the language utilized in the contract of insurance, and on the question of whether the innocent coinsured possessed a reasonable expectation that his or her individual interest would be protected, without reference to the acts committed by his coinsured (see, e.g., *Ryan v MFA Mut. Ins. Co.,* 610 SW2d 428 [Tenn]; *Hedtcke v Sentry Ins. Co.,* 109 Wis 2d 461, 326 NW2d 727; *St. Paul Fire & Mar. Ins. Co. v Molloy,* 291 Md 139, 433 A2d 1135). Finally, other courts, by focusing upon the separate character of responsibility for the wrongful conduct, have permitted recovery by an innocent coinsured, regardless of the joint or severable nature of the interest in the property, holding that the independent and unilateral wrongful acts of one insured should not serve to bar recovery under a policy which names and is intended to protect the innocent coinsured (see, *Howell v Ohio Cas. Ins. Co.,* 130 NJ Super 350, 327 A2d 240; *Winter v Aetna Cas. & Sur. Co.,* 96 Misc 2d 497).

Recently, this court, in *Krupp v Aetna Life & Cas. Co.* (103 AD2d 252, *supra),* was confronted with a situation somewhat analogous to the facts encountered in the present case. In *Krupp,* a fire broke out causing substantial damage to the two-story home owned by the plaintiffs, who were husband and wife. Approximately two years later, the plaintiff husband was

indicted and ultimately convicted for attempted arson in the fourth degree in connection with the fire upon the premises. On appeal, this court was called upon to determine whether the plaintiff wife would be precluded from recovering under a homeowners policy that had been issued to both husband and wife, by virtue of the admittedly illegal acts committed by the husband. This court, in an opinion rendered by Justice Boyers, concluded that: "[A]n innocent coinsured spouse cannot be foreclosed from recovery where insured property held as tenants by the entirety is damaged as a result of the incendiary acts of the other spouse; absent contrary unambiguous provisions, the policy must be construed as covering the interests of each spouse separately, a construction consistent with the reasonable expectations of a policyholder in the shoes of an innocent named insured" *(Krupp v Aetna Life & Cas. Co., supra,* at p 260).

Examined in light of the foregoing case, it is clear that Cherylan Reed, who was the sole owner of the subject premises, and who was found to be innocent of any complicity in its destruction, should not be foreclosed from recovering under a valid contract of insurance, simply because of the unilateral acts committed by her father. These acts were perpetrated without the knowledge or consent of Cherylan, and responsibility therefor may not be vicariously attributed to an innocent party in order to defeat that party's contractual rights *(see, Winter v Aetna Cas. & Sur. Co.,* 96 Misc 2d 497, *supra).* Moreover, since Cherylan Reed was sole owner of the property, our decision herein would be warranted under any of the approaches previously delineated.

In support of their position, the appellants cite several cases wherein corporations have been precluded from recovering proceeds of insurance because the corporate property was willfully destroyed by agents of the corporation *(see, e.g., Shawanga Holding Corp. v New York Prop. Ins. Underwriting Assn.,* 57 AD2d 677; *Clover Crest Trust Stock Farm v New York Cent. Mut. Fire Ins. Co.,* 189 App Div 548; *Elgi Holding v Insurance Co.,* 511 F2d 957). The appellants strenuously urge that the relationship between two individuals as father and daughter is, for the purpose of deciding the issues in this case, analogous to the relationship between a corporation and its agents. This contention need not long detain us. The precedents relied upon by the appellants are patently distinguishable from the present case and are, therefore, of little aid in disposing of the issues raised herein. Suffice it to say, there is

a vast difference between a corporation, which is a legally created entity, capable of functioning only through the acts of its agents, and the relationship of two individuals, albeit father and daughter. Where an agent of a corporation knowingly causes a fire or otherwise destroys corporate property in an attempt to obtain insurance proceeds on behalf of the corporation, that agent's act of misconduct may be considered an act of misconduct by the corporation. The legal principles applicable to corporations are not controlling at bar. Russell Reed was neither a servant, employee nor agent of his daughter, and his independent acts may not be ascribed to her simply because she is his daughter. We conclude, therefore, that Cherylan Reed, as sole owner of the premises in question, is entitled to be compensated for the loss of her home, pursuant to the contracts of insurance which were in effect on the date of the fire.

The second ground advanced by the appellants in an effort to secure a reversal of the judgment appealed from is that the trial court erred in failing to instruct the jury that Cherylan's knowledge of her father's plans to commit arson could be inferred and that actual knowledge or consent need not be proven. The present record discloses, however, that the trial court, after advising the jury that direct evidence of incendiary fires is rarely available, proceeded to instruct the jury that the issue of whether the plaintiffs intentionally caused, procured, consented to or, had prior knowledge of the fire, could be proven by circumstantial evidence. The trial court then explained in detail the concept of circumstantial evidence as well as its significance in establishing a connection between known facts and the facts sought to be proved. Contrary to the appellants' contentions, we find that the charge, in its entirety, conveyed all applicable rules of law in a clear and sufficient manner. We note, moreover, that the appellants' contentions in this regard have not properly been preserved for appellate review since the objection registered at trial by their counsel was not predicated upon the trial court's alleged failure to advise the jury that proof of actual knowledge could be established circumstantially, but rather, rested on the premise that the trial court should have instructed the jury that the appellants bore no burden of proof, whatsoever, with respect to the issue of actual knowledge. The objection actually interposed at trial was, in any event, meritless and the trial court did not err in refusing to so charge.

The appellants' final contention is that the amount of the

judgment in favor of Cherylan Reed should have been offset by the amount the appellants remitted to the Dutchess Bank and Trust Company, pursuant to the standard mortgagee clause contained in both policies.

Under New York law, an insurer is not entitled to an assignment of a mortgage under the subrogation provisions of a standard mortgage clause unless no liability exists to the mortgagor (see generally, 16 Couch, Insurance 2d § 61:374, at 376). It appears that the defendants at bar were not justified in securing a judgment of foreclosure against the property, absent an adjudication that Cherylan Reed was guilty of complicity in the arson. In *O'Neil v Franklin Fire Ins. Co.* (159 App Div 313, affd 216 NY 692), it was held, under similar circumstances, that the insurance company was not justified in paying the mortgagee and claiming subrogation to the mortgagee's rights, without first contesting its liability to the mortgagor and establishing its immunity from liability to him. The defendants at bar, by remitting payment to the mortgagee and thereafter invoking subrogation rights, without first ascertaining whether Cherylan had forfeited her rights under the policy by committing arson, wrongfully deprived her, by virtue of the foreclosure, of the benefit of the residual value of her property. At the time of the foreclosure proceeding, the issue of Cherylan's involvement in the arson had apparently not been litigated. Accordingly, the defendants' payment to the mortgagee bank should properly have been regarded as being in discharge of an obligation owed to the otherwise innocent mortgagor, leaving no claim to which the defendants could be subrogated. The defendants did no more than the policy required when they paid (see, *Palisano v Bankers & Shippers Ins. Co.*, 276 App Div 523). The judgment of foreclosure in this case, therefore, had the effect of depriving Cherylan of her interest in the property, and the jury's verdict in this case, which permitted her to recover the full amount of her loss, was, accordingly, equitable and proper. The defendants are not entitled to any offset against this amount. We further note, in passing, that because the validity of the judgment of foreclosure was neither raised nor relied upon in the pending action, that judgment, which might otherwise have had conclusive effect as res judicata, does not invalidate our decision herein (see, Restatement [Second] of Judgments § 15, at 143).

Accordingly, the judgment appealed from should be affirmed.

THOMPSON, BROWN and WEINSTEIN, JJ., concur.

Justice Weinstein has been substituted for the late Justice Gibbons *(see,* 22 NYCRR 670.2 [c]).

Ordered that the appeal from the order of the Supreme Court, Westchester County, dated December 2, 1983, is dismissed *(see, Matter of Aho,* 39 NY2d 241, 248); and it is further

Ordered that the judgment of the same court, dated January 5, 1984, is affirmed; and it is further

Ordered that the respondent is awarded one bill of costs.