In re SPG OF SCHENECTADY, INC., Debtor.

William M. McCARTHY, Trustee of the Bankrupt Estate of SPG of Schenectady, Inc., Plaintiff,

v.

Edward W. COLLINS and Pamela Murray, as Trustees for the benefit of the stockholders of Col–Mur Enterprises Inc., formerly the Crossroads Restaurant Ltd., Key Bank, N.A., National Casualty Co. (by its officers or agent authorized by appointment or law to receive process) and United National Insurance Company, (by its officers or agent authorized by appointment or law to receive process), Defendants,

J.T.I. Restaurants, Ltd., now known as Iaia's Crossroads Restaurant, Ltd., Defendant–Appellant,

National Casualty Co. (by its officers or agent authorized by appointment or law to receive process), Defendant–Appellee.

No. 493, Docket 86–5056.

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1986.

Decided Nov. 13, 1987.

Nicholas J. Criscione, Albany, N.Y., for defendant-appellant Iaia's Crossroads Restaurant, Ltd.

Peter A. Pastore, Albany, N.Y., (McNamee, Lochner, Titus & Williams, David J. Wukitsch, of counsel), for defendant-appellee Nat. Cas. Co.

Before OAKES, CARDAMONE and WINTER, Circuit Judges.

PER CURIAM:

The subject of this appeal is a restaurant business encumbered originally by a single mortgage to a bank. The owner sold the business and took back a mortgage. Shortly thereafter, the purchaser in turn sold the property and also took back a mortgage as part of the purchase price. The third owner then had a restaurant saddled with three mortgages. While such "borrowing" may not have dulled the third owner's "edge of husbandry," it did result in a cash crunch that unsurprisingly rendered the owner unable either to service the mortgages or to pay the fire insurance premiums on the property. After the owner went bankrupt, a fire destroyed the restaurant, bringing about a forced sale of the property, and precipitating the instant litigation contesting the distribution of the proceeds of the sale.

## BACKGROUND

This is an appeal from a July 18, 1986 order of the District Court for the Northern District of New York (McCurn, J.) that affirmed a decision of the bankruptcy court, —— B.R. ——, which had ruled on the disputed claims to the proceeds. The restaurant property had been owned until March 1980 by Col–Mur Enterprises, Inc. (Col–Mur), subject to a first mortgage held by Key Bank. Col–Mur then sold the property to a company now known as Iaia's Crossroads Restaurant, Ltd. (Iaia), the appellant. Iaia took the property subject to the bank's mortgage and gave back a sec-

ond mortgage to Col–Mur. Under the terms of the second mortgage Iaia promised to keep the property insured against fire for Col–Mur's benefit, and to deliver the insurance policies to and reimburse Col–Mur for the cost of any premiums.

Three years later Iaia sold the property to S.P.G. of Schenectady, Inc. (S.P.G.). S.P.G., in turn, assumed the bank's first and Col–Mur's second mortgages, and gave Iaia a third mortgage for $278,000. In accordance with these mortgages, S.P.G. obtained fire insurance naming Col–Mur and Iaia as the insureds. When S.P.G. ran into financial difficulties, it filed a Chapter 11 bankruptcy petition on October 4, 1984, which was later converted into a Chapter 7 proceeding. S.P.G. thereafter defaulted on its mortgage payments and allowed the fire insurance policy that protected Col–Mur's and Iaia's interests to lapse on November 11, 1984.

Observing the heavy economic seas that S.P.G. had encountered—and its implications for their interests—Iaia and Col–Mur obtained separate fire insurance policies. Appellant Iaia obtained a $300,000 policy with the United National Insurance Company (United National). Col–Mur's $250,000 policy was written by the appellee, National Casualty Company (National) and designated as the named insureds the "Trustees for the Benefit of the Former Stockholders of Col–Mur Enterprises, Inc." (hereafter simply called "Col–Mur"). Col–Mur's policy contained a subrogation clause permitting National to be subrogated to Col–Mur's rights, as mortgagee, against S.P.G. As discussed below, whether Col–Mur obtained the insurance for its own, i.e., "single" benefit, or for S.P.G.'s and Iaia's benefit, i.e., "dual" benefit, as well, is the issue we must decide.

Fire destroyed the restaurant on December 26, 1984 and five days later, Col–Mur instituted foreclosure proceedings and later obtained default judgment of foreclosure. With S.P.G.'s equity of redemption gone, the trustee in bankruptcy proposed to sell the property. To accomplish this, he brought an action against, *inter alia*, Col–Mur, Iaia, National, and United National to compel the two insurance companies to pay their respective policies. The trustee concluded that the insurance payments would reduce the mortgage debts owed by S.P.G. to Col–Mur and Iaia and thus decrease their shares of the sale proceeds. National paid Col–Mur $250,000 and United National paid Iaia $167,000 on their respective policies. The sale of the property produced $325,000. The order of priority for participation in the proceeds was as follows: costs of the sale, Key Bank's first mortgage of approximately $15,000, and the balance due Col–Mur under its mortgage after subtracting the insurance proceeds. The remainder, approximately $200,000, is the subject of this litigation.

In its answer to the trustee's complaint, National asserted that it was subrogated to Col–Mur's lien status and was therefore entitled to the lion's share of the proceeds from the sale of the property. Iaia cross-claimed against National and argued that § 254(4) of New York's Real Property Law required that National's payment to Col–Mur be deducted from the mortgage principal owed by S.P.G. to Col–Mur for which Iaia was secondarily liable. This appeal arose in the bankruptcy court when National moved successfully to dismiss Iaia's cross-claim.

In a Decision and Order dated January 8, 1986, the Bankruptcy Court for the Northern District of New York (Mahoney, J.) found that Col–Mur had obtained the National policy for its own exclusive benefit. The bankruptcy court also held that § 254(4) did not require reduction of the mortgage debt by the amount of the insurance proceeds paid pursuant to National's policy. The district court concluded upon Iaia's appeal that the bankruptcy judge had correctly found Col–Mur's policy to be a single interest policy. It ruled that Real Property Law § 254(4) did not apply and, even if it did apply, § 254(4) did not negate the operation of the subrogation clause in Col–Mur's policy with National. Finally, the district court rejected Iaia's argument that a subrogation clause like the one contained in Col–Mur's policy becomes operative only when there is proof of fraud or of

an underlying tort claim, and that it is otherwise inoperative. We now reverse.[1]

## DISCUSSION

Iaia advances several theories as to why it is entitled to the proceeds. First, it claims that Col–Mur's policy with National was for S.P.G.'s and Iaia's benefit as well as Col–Mur's and therefore, under § 254(4), National is not entitled to subrogation until their interests are fully recovered. Second, Iaia argues that even if Col–Mur's policy with National only covers Col–Mur's interest, § 254(4) operates to nullify the subrogation clause. Third, Iaia claims that the subrogation clause in the policy only becomes operative when there is proof of

fraud or of an underlying tort claim. Before taking up these claims, we first examine § 254(4).

### A. *§ 254(4) of the Real Property Law*

Section 254 construes several clauses often contained—but not necessarily required—in mortgage instruments. *See* N.Y. Real Prop. Law § 254 (McKinney 1968 & Supp.1987). In other words, when the parties to a mortgage incorporate the relevant language, that language must then be construed according to the statute. Section 254(4), entitled "Mortgagor to keep buildings insured," construes a covenant[2] by the mortgagor that it will insure the mortgaged property against fire.[3] Section

1. Defendant-appellant Iaia has petitioned for a rehearing which we grant. And, having granted the petition for rehearing and upon reconsidering this appeal, we withdraw and vacate the panel opinion dated August 19, 1987 and substitute in its place the present opinion.

2. The covenant states:

   That the mortgagor will keep the buildings on the premises insured against loss by fire for the benefit of the mortgagee; that he will assign and deliver the policies to the mortgagee; and that he will reimburse the mortgagee for any premiums paid for insurance made by the mortgagee on the mortgagor's default in so insuring the buildings or in so assigning and delivering the policies,....

   N.Y.Real Prop.Law § 254(4) (McKinney 1968 & Supp.1987).

3. Section 254(4) construes the covenant as follows:

   The mortgagor, his heirs, successors and assigns will, during all the time until the money secured by the mortgage shall be fully paid and satisfied, keep the buildings erected on the premises insured against loss or damage by fire, to an amount to be approved by the mortgagee not exceeding in the aggregate one hundred per centum of their full insurable value and in a company or companies to be approved by the mortgagee, and will assign and deliver the policy or policies of such insurance to the mortgagee, his executors, administrators, successors or assigns, which policy or policies shall have endorsed thereon the standard New York mortgagee clause in the name of the mortgagee, so and in such manner and form that he and they shall at all time and times, until the full payment of said moneys, have and hold the said policy or policies as a collateral and further security for the payment of said moneys, and in default of so doing, that the mortgagee or his executors,

administrators, successors or assigns, may make such insurance from year to year, in an amount in the aggregate not exceeding one hundred per centum of the full insurable value of said buildings erected on the mortgaged premises for the purposes aforesaid, and pay the premium or premiums therefor, and that the mortgagor will pay to the mortgagee, his executors, administrators, successors or assigns, such premium or premiums so paid, with interest from the time of payment, on demand, and that the same shall be deemed to be secured by the mortgage, and shall be collectible thereupon and thereby in like manner as the principal moneys, and that should the mortgagee by reason of such insurance against loss by fire receive any sum or sums of money for damage by fire, and should the mortgagee retain such insurance money instead of paying it over to the mortgagor, the mortgagee's right to retain the same and his duty to apply it in payment of or on account of the sum secured by the mortgage and in satisfaction or reduction of the lien thereof shall be limited and qualified as hereafter in this paragraph provided. Said insurance money so received by the mortgagee shall be held by him as trust funds until paid over or applied as hereinafter provided. If the mortgagor shall notify the mortgagee in writing within thirty days after the fire that the mortgaged premises have been damaged thereby, and shall thereafter make good the damage by means of such repairs, restoration or rebuilding as may be necessary to restore the buildings to their condition prior to the damage, then upon presentation to the mortgagee within three years after the fire of proof that the damage has been fully made good (and if he so demands in writing within thirty days after such presentation of proof, then upon presentation to the mortgagee within thirty days after such demand of proof also of the actual

254(4) is implicated here because the relevant language was included in the bond and mortgage given by Iaia to Col–Mur.

In instances where a damaged property has not been repaired, § 254(4) requires that the mortgagee apply insurance proceeds to offset the mortgage principal and to pay to the mortgagor any proceeds exceeding that amount. Thus, § 254(4) is designed to prevent the mortgagee from receiving a windfall: the mortgagee only has an interest in the outstanding mortgage debt. Section 254(4) insures that the mortgagee, upon the mortgagor's default, will not recover this debt twice: once from the insurance company and again from the proceeds of the sale of the property. The statute does not explicitly address the rights of the mortgagee's insurance company as against the mortgagor or junior mortgagees.

With this background, we now turn to the issues raised by Iaia.

B. *The Status of Col–Mur's Policy with National*

■ As mentioned above, Iaia argues that Col–Mur's policy with National was intended to cover Iaia's and S.P.G.'s interests as well as Col–Mur's, that is, it was a dual interest policy. The bankruptcy court found—and the district court agreed—that Col–Mur had procured a single interest policy because it was the only insured named

in its policy. We believe such a conclusion is a plain error of law.

■ We hold that *all* insurance policies taken out by a mortgagee pursuant to § 254(4) upon the mortgagor's default are automatically "dual interest" policies. A close reading of the text of § 254(4) points persuasively toward this finding. First, § 254(4) provides that if the mortgagor defaults in insuring the premises, the mortgagee "may make *such insurance* from year to year." If the mortgagor had insured the premises himself, he undoubtedly would have benefited from the policy. It follows that the mortgagee's acquisition of "such insurance" is—absent compelling evidence to the contrary—similarily intended to benefit the mortgagor.

Second, § 254(4)'s imposition of an obligation on the mortgagor to reimburse the mortgagee for any premiums paid thereunder is even stronger evidence that the section creates dual interest policies as a matter of law. Finding that § 254(4) requires reimbursement for not only a mortgagee's payments for a dual interest policy but also for a single interest policy—as National contends here—would be highly inequitable. The result would be that the mortgagor would be statutorily required to pay premiums for insurance that might not cover him and for which he might receive no benefit. We cannot attribute to the New

---

cost of such repairs, restoration and rebuilding and of the reasonable value of any part of the work so performed by the mortgagor) the mortgagee, unless he rejects the proof submitted to him as insufficient, shall pay over to the mortgagor so much of said insurance money theretofore received by the mortgagee as does not exceed the lesser of (1) the reasonable cost of such repairs, restoration and rebuilding or (2) the total amount actually paid therefor by the mortgagor, together with the reasonable value of any part of the work done by him. Such proof shall be deemed sufficient unless, within sixty days after presentation of all such proof to the mortgagee as aforesaid, he shall notify the mortgagor in writing that the proof is rejected. Any excess of said insurance money over the amount so payable to the mortgagor shall be applied in reduction of the principal of the mortgage. Provided, however, that if and so long as there exists any default by the mortgagor in

the performance of any of the terms or provisions of the mortgage on his part to be performed the mortgagee shall not be obliged to pay over any of said insurance money received by him. If the mortgagor shall fail to comply with any of the foregoing provisions within the time or times hereinabove limited, or shall fail within sixty days after rejection of the proof so submitted to commence an action against the mortgagee to recover so much of said insurance money as is payable to the mortgagor as hereinabove provided, or if the entire principal of the mortgage shall have become payable by reason of default or maturity, the mortgagee shall apply said insurance money in satisfaction or reduction of the principal of the mortgage; and any excess of said insurance money over the amount required to satisfy the mortgage shall be paid to the mortgagor.
N.Y.Real Property Law § 254(4) (McKinney 1968 & Supp.1987).

York legislature an intent to bring about such an inequitable result.

As a final note, as far as the record shows, the insurance company charged the same premiums regardless of whether the mortgagor or the mortgagee took out the policy. If the policy had been intended to be a single interest policy and if, as National argues, it was subrogated to Col–Mur's lien position to the extent of payments made, National would have assumed less risk than under a dual interest policy. Presumably, then, National would have charged lower premiums for a single interest policy. The apparent equality in premium costs here also points toward the conclusion that the policy was intended to benefit the mortgagor as well as the mortgagee, that is, it was a dual interest policy.

National is not entitled to subrogation under a dual interest policy, except under certain circumstances. In *Reed v. Federal Insurance Co.*, 123 A.D.2d 188, 196, 510 N.Y.S.2d 618, 623 (2d Dep't 1987), the court held that in paying insurance proceeds to the mortgagee, the insurer had done no more than the policy required, and therefore could not invoke its subrogation rights. Only an adjudication that the mortgagor had been complicit in the act of arson that had destroyed the property (or had otherwise forfeited her rights under the policy) would have triggered the subrogation clause. Without such a determination, the insurance proceeds paid to the mortgagee were held to reduce the mortgage debt without giving the insurer any cause of action against the mortgagor. Looking at the same situation in reverse, the court in *Larchmont Federal Savings & Loan Association v. Ebner*, 89 A.D.2d 1009, 1009, 454 N.Y.S.2d 450 (2d Dep't 1982), held that where the mortgagors *had* violated the conditions of the policy, thereby precluding their recovery from the insurer, the insurer's payment to the mortgagee could not be applied to extinguish the mortgage debt. Thus, only a showing of the mortgagor's culpable conduct would prevent the insurance proceeds from being applied to the mortgage debt and would trigger the insurer's subrogation rights un-

der the standard New York policy's mortgage and subrogation provisions. National fails to allege such conduct here.

Given these considerations, we hold that the trial court erred in finding that the policy here was a single interest policy. Since Col–Mur's policy was in fact a dual interest policy, National therefore was not entitled to be subrogated to Col–Mur's lien position over the interests of Iaia and S.P. G. Accordingly, we need not address the possible extent of National's subrogation rights or whether a subrogation clause is triggered only in cases when there is proof of fraud or of an underlying tort claim.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is reversed and the matter remanded to it for the distribution of the sale proceeds in accordance with this opinion.