OPINION OF THE COURT
Kaye, J.
 The innocent owner of property destroyed by fire is not barred from recovery, under the terms of insurance policies unqualifiedly naming her as an insured, even though the property was transferred to her through her father without consideration when she was 18 years old and her father, the named coinsured, independently caused the fire. Moreover, the insurers here have no right to offset against liability to their insured the amounts they previously paid to the mortgagee under a standard mortgagee clause. The insurers’ own conduct in acquiring title to the property, after simply disclaiming liability and before any adjudication of the issue of liability to their insured, precludes such relief.
In 1976, Universal Gym Equipment Corporation, of which both plaintiffs — Cherylan Reed and her father, Russell Reed— were shareholders, purchased a contemporary 14-room house and barn on 30 acres of land in Clinton Corners. The Reed family occupied those premises as their home. Title was transferred to Russell Reed and his wife, as tenants by the entirety, and thereafter to International Credilogical Corporation, of which plaintiffs were shareholders and Cherylan was president. On February 15, 1978, the property was conveyed— without consideration — to Cherylan Reed alone. She was then 18 years old.
*584 One year later, in January 1979, defendant insurers issued standard homeowners policies on the property, effective immediately, providing total coverage of more than $500,000. The named insureds were Cherylan Reed and Russell Reed. The applications revealed that the deed to the property was in Cherylan’s name alone, that Russell lived in the house, and that the house had previously been owned by his corporation. The applications also showed that Dutchess Bank and Trust Company held a first mortgage on the property; in October 1978, after repeated delinquencies in mortgage payments, Dutchess had begun foreclosure proceedings and filed a lis pendens against the property. Both policies provided that they would be void in the event of the insured’s willful concealment, misrepresentation or false swearing regarding material facts, and that the insurer would not be liable for any loss that occurred "while the hazard is increased by any means within the control or knowledge of the insured”. Both policies also included a standard mortgagee clause[1] in favor of Dutchess, the mortgagee.
On March 13, 1979, some two months after effectiveness but before cancellation for failure to transmit the down payment or first premiums, the Reed home was destroyed by fire. Suspecting arson, defendants commenced an investigation and disclaimed liability. On December 18, 1979, they paid Dutchess $186,893.41, the mortgage indebtedness as of the date of the fire, and they obtained an assignment of the mortgage.
Upon defendants’ continued refusal to pay under the insurance policies, in April 1980 plaintiffs began the present action. Defendants denied liability on the ground that plaintiffs had *585 knowingly increased the risk of fire, made fraudulent statements in proofs of loss and examinations under oath,, and attempted to conceal the cause of the fire. Defendants further contended that any recovery by plaintiffs had to be reduced by the amount already paid to Dutchess, the mortgagee, in accordance with the standard mortgagee clause.
At trial, the evidence established that by the time of the fire there were numerous unsatisfied judgments against Russell Reed, that he was heavily in debt, that the bank was threatening to foreclose, and that he was attempting to sell the property. Russell Reed had previously been convicted of forgery, mail fraud and securities fraud; shortly before the fire he had pleaded guilty to petty larceny in connection with a check-kiting scheme. Defendants urged that title to the house and other assets (including Russell Reed’s mother’s assets) had been transferred to Cherylan Reed simply to insulate the property from the demands of her father’s creditors while in actuality he maintained complete control of them. Cherylan acknowledged that she did not make the mortgage payments or take responsibility for maintaining the property. That was her father’s role.
The trial court charged the jury that even if it found that one insured intentionally set the fire that destroyed the insured premises, the other — though a relative — still might recover unless there were "proof of knowledge, consent or authorization or connivance upon the part of a particular plaintiff in regard to the fire”. Defense counsel unsuccessfully contended that the jury should be instructed that one plaintiffs knowledge of or consent to the other’s acts need not be actual and could be implied, that the "unity of interest” between father and daughter meant they were "virtually inseparable and equals” so that no showing of actual knowledge was required.
In response to special questions, the jury found that the fire was incendiary; that Russell Reed had caused or procured it;[2] that Cherylan Reed had not; that his actions were taken without her knowledge and consent; that Russell Reed had willfully and intentionally sworn falsely to a material fact in the proof of loss or examination under oath, so as to defraud defendants; and that Cherylan Reed had not. The jury awarded her $186,000, the cash value of the destroyed building, and $3,440 for lost personal property, apparently rejecting *586 her claim that the entire contents, of the house also had been transferred to her. Defendants’ motions to set aside the verdict or to set off against the award their payment to Dutchess were both denied by the trial court. The Appellate Division affirmed the judgment, concluding that in the circumstances the jury’s determination left the insurance companies without a defense to payment. We are in fundamental agreement with the thorough Appellate Division opinion (123 AD2d 188), and therefore affirm.
The Insurance Issue
Undisputedly, the property was insured by defendants against the very peril that destroyed it, and plaintiff Cherylan Reed was the owner of the property and a named insured with her own contract right to recover under the policies; further, as the jury found and the Appellate Division affirmed, she was herself innocent of both material misrepresentation to the insurers and knowledge of or complicity in her father’s wrongdoing. A single question remains for our determination: whether in the circumstances the misconduct of Russell Reed, which would defeat recovery if he alone were the named insured, should be imputed to the coinsured, his daughter.[3]
Legal responsibility generally flows from one’s own acts, not the imputed misconduct of others. At the root of the doctrine of imputed fault is control of the actor (see, e.g., Prosser and Keeton, Torts ch 12 [5th ed 1984]). On the issue of control, however, defendants’ position throughout this litigation has strenuously and undeviatingly been the converse: not that Cherylan Reed had any right to control her father’s actions, but that he so dominated and controlled her that the veil of her property ownership must be pierced and cast aside, and the two treated as one person.
There being no direct authority for this novel position, defendants urge that the appropriate analogy is to cases barring recovery of insurance proceeds by corporations where corporate property has been destroyed by agents who would be the beneficiaries of any recovery (see, e.g., Shawanga Holding *587 Corp. v New York Prop. Ins. Underwriting Assn., 57 AD2d 677; Clover Crest Stock Farm v New York Cent. Mut. Fire Ins. Co., 189 App Div 548). We agree with the Appellate Division that this analogy fails. Whatever the law may be with respect to the imputation of corporate agents’ wrongdoing to the entity —because the corporate entity necessarily acts only through its agents — that situation finds no parallel in the one before us, involving two adults (albeit father and daughter), each of them able to act independently of the other and each of them generally responsible under the law only for his or her own acts.
A closer analogy is in the "innocent coinsured” cases, typically involving the central elements of arson and spouses, one innocent the other not (see, e.g., Krupp v Aetna Life & Cas. Co., 103 AD2d 252; O’Donnell, Imputation of Fraud and Bad Faith: The Role of the Public Adjuster, Co-Insured and Independent Adjuster, 22 Tort & Ins LJ 662, 680 [1987]; Annotation, Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned by Another Insured, 11 ALR4th 1228). In our view, these better guide our decision in the present case as it was put to the jury, in that they concern individuals (one innocent, the other not) alleged to have a single interest in property or insurance proceeds and for that reason to share in each other’s culpability, the wrongdoing of one nullifying recovery as to both. Moreover, these decisions balance similar competing policy concerns — for example, a reluctance to impute one individual’s fraud to another, and yet an interest in discouraging arson for profit (see, Note, The Problem of the Innocent Co-Insured Spouse: Three Theories on Recovery, 17 Val U L Rev 849 [1983]).
Traditionally in these cases the courts have focused on the nature of the property ownership — usually tenancy by the entirety — as well as the policy ownership, and denied recovery to both coinsureds on the theory that the mutual obligation to save and preserve the property necessarily meant that a breach by one party was chargeable to the other (see, e.g., Short v Oklahoma Farmers Union Ins. Co., 619 P2d 588 [Okla]; Matyuf v Phoenix Ins. Co., 27 Pa D & C 2d 351; see also, Butler & Freemon, Innocent Coinsured: He Burns It, She Claims — Windfall or Technical Injustice% 17 Forum 187 [1981]). The anachronistic assumption underlying such a rule, and its potential unfairness, have led courts within the past decade increasingly to reject it (see, O’Donnell, op. cit., 22 Tort & Ins U, at 679-680).
*588 The "new 'dominant’ rule” (Ryan v MFA Mut. Ins. Co., 610 SW2d 428, 434 [Tenn]) looks not to the property interest of each named insured but to the terms of the insurance policy— which is, after all, a contract — reading ambiguous language against the insurer (see, Note, op. cit., 17 Val U L Rev, at 852; Comment, Spouse’s Fraud as a Bar to Insurance Recovery, 21 Wm & Mary L Rev 543 [1979]). In thus viewing the issue, courts have given effect to the reasonable expectation of a property owner that her interest was covered by a policy naming her without qualification as one of the persons insured, despite the independent wrongdoing of a coinsured (see, e.g., Ryan v MFA Mut. Ins. Co., 610 SW2d 428 [Tenn], supra; Hosey v Seibels Bruce Group, S.C. Ins. Co., 363 So 2d 751 [Ala]; Hoyt v New Hampshire Fire Ins. Co., 92 NH 242, 29 A2d 121). On a related rationale, other courts have allowed recovery by an innocent coinsured — again without regard to the nature of the property interest — as a matter of fairness and equity, concluding that the independent wrongdoing of one insured should not bar recovery as to the coinsured under a policy that names and is intended to protect her (see, e.g., Howell v Ohio Cas. Ins. Co., 130 NJ Super 350, 327 A2d 240). The soundness of such an approach has, prior to the Appellate Division writing in the present case, also been recognized in Krupp v Aetna Cas. & Sur. Co. (103 AD2d 252, supra) and Winter v Aetna Cas. & Sur. Co. (96 Misc 2d 497).
Distinctions plainly can be drawn between the "innocent coinsured” decisions and the present case; perhaps most significant is the fact that Cherylan Reed was the sole owner of the property.[4] We are nonetheless persuaded that the rationale of those cases permitting an innocent coinsured to recover in accordance with the contract of insurance, despite an alleged unity of interest in the property with a guilty coinsured, is applicable. Knowing the facts set forth in plaintiffs’ applications, defendants chose to underwrite the risk, and the insurance policies unqualifiedly named Cherylan Reed as an in *589 sured. Cherylan Reed made no material misrepresentations to defendants, and had no knowledge of or complicity in her father’s wrongdoing. Given these affirmed findings, the alleged "unity of interest” of the two individuals — which defendants at trial pressed as the dispositive issue — furnishes no basis for imputing Russell’s wrongdoing to Cherylan Reed.
In these circumstances, we therefore conclude that the independent wrongdoing of Russell Reed should not be imputed to Cherylan Reed, and that her recovery was correctly sustained.
The Set-off Issue
Defendant insurers next claim that amounts previously paid to the mortgagee must be offset against any amounts found due to plaintiff Cherylan Reed, or she will enjoy a double recovery. Because of the insurers’ own chosen course, however, we affirm the Appellate Division order denying the offset.
A standard mortgagee clause in an insurance policy gives rise to a separate insurance of the mortgagee’s interest, independent of the mortgagor’s right of recovery (Syracuse Sav. Bank v Yorkshire Ins. Co., 301 NY 403, 407). Payment by the insurer to the mortgagee, to the extent of its interest, is ordinarily regarded as having been made on behalf of the mortgagor and extinguishes the mortgagor’s debt, leaving the mortgagor with its property as well as any excess paid by the insurer (see, Grady v Utica Mut. Ins. Co., 69 AD2d 668; Hartwig v American Ins. Co., 169 App Div 60; 6A Appleman, Insurance Law & Practice § 4164). Generally, an insurer who is liable to its insured is not entitled to an assignment of the mortgage (see, 16 Couch, Insurance 2d § 61:374, at 375-376).
A different sequence necessarily ensues when the insurer, having paid the mortgagee in accordance with the standard mortgagee clause, contests liability under the policy (see, O’Neil v Franklin Fire Ins. Co., 159 App Div 313, affd 216 NY 692). If the insurer is indeed not liable to the insured under the policy, then it may be subrogated to the rights of the mortgagee and obtain an assignment of the mortgage, with the right to foreclose and take possession of the property (see, 16 Couch, Insurance 2d, op. cit.). The mere disclaimer of liability by an insurer does not vest the insurer with a right of subrogation to the rights of the mortgagee (see, O’Neil v Franklin Fire Ins. Co., supra; Southern Tier Coop. Ins. Co. v *590 Coon, 53 AD2d 970, 971; see generally, Comerford, When is Money Paid the Mortgagee Recoverable? — Is the Counterclaim Compulsory?, 22 Tort & Ins LJ 113 [1986]; Dwyer and Barney, Analysis of Standard Mortgage Clause and Selected Provisions of the New York Standard Fire Policy, 19 Forum 639, 667 [1984]).
Here, soon after the fire, defendants commenced an arson investigation, retained counsel and asserted that they had no liability to plaintiffs under the policies. On December 18, 1979, defendants paid the mortgagee $186,893.41, and they obtained an assignment of the mortgage. In September 1981, defendants foreclosed and at the sale bid $219,911.58, the total sum purportedly owed in the foreclosure action. Their application for a deficiency judgment against plaintiffs, on the ground that the market value of the property was only $45,000, was denied in light of the amount they had voluntarily chosen to bid for the property.[5] Thus, long before any adjudication of the issue of defendants’ liability to either plaintiff (trial commenced in late summer 1983), defendants had exercised a right of subrogation and assumed ownership of the property.
Upon merely disclaiming liability to plaintiffs, defendants were not entitled to the assignment of the mortgage which they obtained from Dutchess. In the circumstances, their payment to Dutchess, the mortgagee, must be regarded as having discharged the mortgage debt, leaving no claim against Cherylan Reed to which they might have been subrogated. Having themselves chosen a course which included proceeding with the foreclosure sale, bidding in the full mortgage indebtedness, and assuming ownership of the property in place of their insured — all well before any adjudication of their liability to her — defendants cannot now claim a right of setoff against Cherylan Reed under the insurance policies.
*591 Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

. The standard mortgagee clause provides in part:
"If a mortgagee is named in the Declarations, loss or damage, if any, on buildings under this policy, shall be payable to the aforesaid as mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner * * *
"Whenever this Company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall,.to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee’s (or trustee’s) claim.”

. There was no criminal prosecution for arson.

. Plaintiffs will be referred to in this opinion as "coinsureds”, as they were so named in the policies. The thrust of defendants’ argument is not that Russell Reed lacked any insurable interest (see, Insurance Law § 3401), but that neither named insured can recover by reason of the wrongdoing of one and their unity of interest. The opinion treats the issue as it was presented.

. Defendants devote their argument in this court principally to a "straw party” defense, not precisely articulated as such at trial, and they strenuously urge that the rationale of the "innocent coinsured” cases should not apply. However, we approach this case as it was presented at trial — essentially, that by reason of the "unity of interest” between Cherylan and Russell Reed, his wrongdoing is necessarily imputed to her. To the extent defendants’ theory rests on a notion that Cherylan Reed was a "consenting pawn” in her father’s fraud, it is of course at odds with the affirmed findings regarding her own innocence.

. Defendant’s insistence that this court ignore facts that are reported in a decision in a separate proceeding, because they are "outside the record,” is misplaced. These facts — which both Supreme Court and the Appellate Division properly took into account — are recited in a Supreme Court decision dated May 14, 1982 in defendants’ own action from which no appeal was filed and of which we may take notice (CPLR 4511 [a]; Richardson, Evidence § 17 [Prince 10th ed 1973]). The facts were, moreover, actually made a part of the record in the present case in connection with plaintiifs’ opposition to defendants’ affirmative defense of setoff. We further note, as did the Appellate Division (123 AD2d 188, 196), that in the present action the parties have not raised or relied on any preclusive effect of the judgment of foreclosure.