**FLEET BUSINESS CREDIT L.L.C., Plaintiff,**

v.

**GLOBAL AEROSPACE UNDERWRITING MANAGERS LTD., Indemnity Insurance Company of North America, the Marine Insurance, Commercial Union, GU International, Mitsui Marine and Fire, Munich Re, Eagle Star, and Tokio Marine and Fire, Defendants.**

**Highland Capital Management L.P., Plaintiff,**

v.

**Global Aerospace Underwriting Managers Ltd., Indemnity Insurance Company of North America, Marine Insurance, Commercial Union, and CGU International, Defendants.**

**Nos. 02 Cv. 3721(BSJ)(JCF), 02 Cv. 9360(BSJ)(JCF).**

United States District Court, S.D. New York.

July 28, 2009.

Gary Silverman, O'Dwyer and Bernstein, L.L.P., New York, NY, Michael H. Moirano, Nisen & Elliott, LLC, Robert D. Sweeney, Chicago, IL, for Plaintiff.

Katherine B. Posner, New York, NY, for Defendants.

### OPINION & ORDER

BARBARA S. JONES, District Judge.

These consolidated actions concern a dispute over the extent of coverage of an insurance policy issued to a commercial airline, Tower Air Inc. ("Tower"). On June 18, 2009, Magistrate Judge Francis issued a Report and Recommendation ("R & R") that advised the Court to grant in part and deny in part a motion for summary judgment filed by Defendants. Both Plaintiffs and Defendants object to portions of the Magistrate Judge's R & R.

### BACKGROUND

Beginning in 1996, Plaintiff Fleet Business Credit, L.L.C. ("Fleet") leased airframes and engines to Tower, Inc.

("Tower"). Beginning in 1997, Plaintiff Highland Capital Management L.P. ("Highland") provided Tower with financing for others. In 2000, Tower filed for voluntary bankruptcy under Chapter 11. Reports later showed that component parts from the aircraft and engines provided by Fleet and Highland had been removed around the time of the bankruptcy filing. According to Tower's records, many of the removed parts were installed in other Tower aircraft. The whereabouts of other parts was undocumented. On June 14, 2000, the Tower bankruptcy trustee issued a directive to Tower's employees ordering them to stop removing parts from the Fleet and Highland equipment. Some parts were nonetheless removed after the issuance of this directive, as Tower records documented. In 2000, Fleet and Highland submitted claims for the missing parts to Tower's insurance broker. Those claims were denied.

Coverage in this case is controlled by the wording of Tower's Airline Hull and Liability Insurance policy for the period May 1, 1998 to May 1, 1999 (the "Policy"), as previously determined by this Court in an Order dated October 30, 2007. Tower, Fleet, and Highland were co-insureds under this Policy.

The R & R describes the procedural history and additional facts in some detail, familiarity with which is presumed.

### STANDARD OF REVIEW

#### A. Review of R & R

■ When a Magistrate Judge has issued findings or recommendations, the district court "may accept, reject, or modify [them] in whole or in part." 28 U.S.C. § 636(b)(1)(C). The Court reviews *de novo* any portions of a Magistrate Judge's R & R to which a party has stated an objection. 28 U.S.C. § 636(b)(1)(C); *see United States v. Male Juvenile*, 121 F.3d

34, 38 (2d Cir.1997). "Where no objections are filed, or where the objections are 'merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition,' the court reviews the report for clear error." *Brown v. Ebert,* No. 05 Civ. 5579, 2006 WL 3851152, at *2 (S.D.N.Y. Dec. 29, 2006) (quoting *Gardine v. McGinnis,* No. 04 Civ. 1819, 2006 WL 3775963, at *4 (S.D.N.Y. Dec. 20, 2006)).

### B. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York,* 72 F.3d 1051, 1060–61 (2d Cir.1995). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

### DISCUSSION

For the following reasons, the Court adopts the recommendation of Magistrate Judge Francis and GRANTS in part and DENIES in part Defendants' motion for summary judgment. Defendants' motion for summary judgment is GRANTED as to those claims seeking recovery on parts whose removal was "accounted for" (i.e.—documented) and occurred prior to issuance of the June 14, 2000 bankruptcy trustee directive. Defendants' motion for summary judgment is DENIED as to those claims seeking recovery on parts whose removal was "unaccounted for" (i.e.—not documented). Defendants' motion for summary judgment is also DENIED as to those claims seeking recovery on parts whose removal was accounted for and occurred subsequent to the issuance of the June 14, 2000 bankruptcy trustee directive.

Plaintiff's objections are overruled, except insofar as they seek clarification concerning recovery on parts removed after the trustee directive. Defendants' objections are overruled. Those portions of the Report and Recommendation that are not objected to have been reviewed for clear error and are hereby affirmed and adopted.

The Court will first address Plaintiff's objections to the R & R. It will then consider the Defendants' objections.

### A. Plaintiff's Objections

Plaintiff states three objections to the R & R: 1) the R & R misconstrues the innocent coinsured rule, and suggests that the rule does not apply unless there is an express severability of interest provision applicable to the property damage coverage in question; 2) the Report incorrectly states that this Court previously deter-

mined, in its October 30, 2007 Order, that "there is no severability of interests as between insured" under the All Risk coverage, and that "under the policy language as the Court has already construed it, intentional acts by Tower are not fortuitous for purposes of recovery by Fleet and Highland"; and 3) although the Report recognizes that on June 14, 2000, the Tower Air bankruptcy trustee ordered Tower's employees to stop cannibalizing plaintiffs' equipment, it does not appear to permit plaintiffs to recover for the parts removed after that date.

### 1. The Innocent Coinsured Rule.

Plaintiffs first object that the R & R misinterpreted the "innocent coinsured" rule and its applicability. The Court agrees with the Magistrate Judge that the "innocent coinsured" rule is not applicable in this case and adopts the Magistrate Judge's conclusion that intentional acts by Tower may not serve as the basis for

recovery by Fleet and Highland. (R & R, 12.) The Court's reasoning is as follows.

Part II of the 1998–1999 Policy states that the "Insurers shall pay for any Physical Damages loss to the Aircraft including disappearance of the aircraft," defining "Physical Damage" as "direct and accidental physical loss of or damage to the aircraft sustained during the Policy Period." (Decl. Katherine Posner dated February 6, 2009 Ex. 1, 15.) It is undisputed that the majority of the losses claimed by Plaintiffs were caused by intentional acts taken on behalf of Tower, by Tower employees. Based on a plain reading of the Policy language, claims based on damage caused by these acts are not covered under Part II of the Policy, since they are not "accidental." [1]

Plaintiffs argue, however, that the Court should ignore the otherwise plain meaning of the Policy and reinterpret the term "accidental" in accordance with the "innocent coinsured" rule.[2] Plaintiffs argue, es-

---

1. The same reading of the Policy's coverage results even when the Policy is characterized as an "all risks" insurance policy. As the Magistrate Judge noted (R & R, 8), such policies cover the risk of all losses not specifically excluded from coverage, as long as the losses are "fortuitous." *A & B Enterprises, Inc. v. Hartford Ins. Co.*, 198 A.D.2d 389, 389–90, 604 N.Y.S.2d 166, 166–68 (2d Dep't 1993). Under the fortuity doctrine, a policyholder cannot obtain insurance for losses it "knows of, planned, intended or is aware are substantially certain to occur." National *Union Fire Ins. Co. v. Stroh Co.*, 265 F.3d 97, 106 (2d Cir.2001) (citation and quotations omitted).

2. More specifically, Plaintiffs object that the R & R misconstrues the innocent coinsured rule and suggests that the rule does not apply unless there is an express severability of interest provision applicable to the property damage coverage in question. The Court does not agree with Plaintiffs that the R & R makes such a suggestion. The Magistrate Judge's conclusion was that in this case, based on the plain meaning of the Policy, the coinsureds' interests were not several and that application

of the "innocent coinsured" rule was not appropriate. Plaintiff's argument—that the "innocent coinsured" is the default that must be excluded—applies where it has already been determined that the insurance policy covers the damage claimed. At that point, a court might determine that although the actions of one "guilty" coinsured trigger the coverage exclusion, the claims of the "innocent coinsured" will not also be condemned by that exclusion. The court is generally guided by an examination of whether the coinsureds' interests are joint or several, with ambiguity resolved in favor of severability, and therefore also in favor of application of the "innocent coinsured" rule. *See, e.g. Reed v. Federal Insurance Co.*, 71 N.Y.2d 581, 587–88, 528 N.Y.S.2d 355, 357–58, 523 N.E.2d 480 (1988) (if ambiguous, "the policy's language is read against the insurer and the interests are considered to be several"—"innocent coinsured" cases generally "concern individuals (one innocent, the other not) alleged to have a single interest in property or insurance proceeds and for that reason to share in each other's culpability, the wrongdoing of one nullifying recovery as to both"). In this case, however,

sentially, that although certain acts were intentional in relation to Tower (a "guilty coinsured"), they were "accidental" in relation to Plaintiffs Fleet and Highland (the "innocent coinsureds"). This interpretation would require an expansion of the basic terms of coverage by requiring the insurer to pay out for claims based on the intentional acts of an insured party.

Both Plaintiffs and Defendants point to other portions of the Policy that they believe should recommend or discourage the Court from applying the "innocent coinsured" rule in this fashion. Specifically, the parties dispute the nature of the coinsureds' interests—joint or several—under various scenarios governed by the Policy, since the "innocent coinsured" rule is generally applicable only where interests are several.

Plaintiffs cite an endorsement to the Policy incorporating a standard mortgagee/lessor clause known in the industry as the Airline Finance/Lease Contract Endorsement ("the AVN 67B Endorsement").

> "It is noted that the Contract Party(ies) have an interest in respect of the Equipment under the Contract(s). Accordingly, with respect to losses occurring during the period from the Effective Date until the expiry of the Insurance or until the expiry or agreed termination of the Contract(s) or until the obligations under the Contract(s) are terminated by any action of the Insured or the Contract Party(ies), whichever shall first occur, in respect of the said interest of the Contract Party(ies) and in consideration of the Additional Premium it is confirmed that the Insurance afforded by the Policy is in full force and effect."

Plaintiffs also cite section 3.2 of the AVN 67B Endorsement:

> conduct of the "guilty" coinsured has caused damage for which no insurance coverage was provided in the first place. It is, therefore, up to Plaintiffs to show that the spirit of the

> "The cover afforded to each Contract Party by the Policy in accordance with this Endorsement shall not be invalidated by any act or omission (including misrepresentation and non-disclosure) of any other person or party which results in a breach any term, condition or warranty of the Policy PROVIDED THAT the Contract Party so protected has not caused contributed to or knowingly condoned the said act or omission."

Defendants, as well as the R & R, point to the s.14 Cross Liability Provision of the Policy, which states:

> "This insurance shall provide the same protection to each insured hereunder as would have been available had this policy been issued separately to each Insured, except that in no event shall the Insurers total liability exceed the Limits of Liability set forth in the Declarations. This provision shall not operate or apply to any claim for loss of or damage to property insured under Part II [the All Risk Hull Coverage] or Part IV [the All Risk Spares Coverage] of this Policy."

■ However, this dispute is secondary. It would be relevant only if the Court believed that the terms designating the scope of the Policy's coverage were somehow ambiguous on this issue. That is, if the terms were ambiguous, and if the coinsureds' interests under this portion of the Policy were several, then the Court might consider using the "innocent coinsured" rule to resolve the ambiguity in favor of Plaintiffs' unorthodox interpretation of the Policy's coverage. However, in this case, there is no such ambiguity. The Policy plainly does not cover damage caused intentionally by any-coinsured.

"innocent coinsured" rule nonetheless recommends an unconventional reading of the Policy's coverage so as to reach the damage claimed.

■ The "innocent coinsured rule" cannot be used to undermine this plain meaning. As the Magistrate noted, the "dominant" version of the "innocent coinsured" rule looks to the contractual terms of the insurance policy in determining whether and how the rule applies. *Reed,* 71 N.Y.2d at 588, 528 N.Y.S.2d at 358; *J. Aron & Co. v. Chown,* 231 A.D.2d 426, 426, 647 N.Y.S.2d 8, 9 (N.Y.A.D. 1 Dept.1996) (finding "express language" controlling as to applicability of "innocent coinsured" rule); *Krupp v. Aetna Life & Cas. Co.,* 103 A.D.2d 252, 261, 479 N.Y.S.2d 992 (N.Y.A.D. 1st Dep't 1984) (looking to the "specific language in the insurance contract" before determining that application of the "innocent coinsured" rule was appropriate). Given this emphasis on the contractual terms, the "innocent coinsured" rule cannot be used to expand the scope of coverage—it cannot transform uncovered "intentional" acts into covered "accidental" acts by forcing the Court to take on the perspective of the "innocent" coinsured rather than the "guilty" coinsured actor.

The Court therefore agrees with the conclusion of the Magistrate Judge, who determined that Fleet and Highland could not recover from the insurer for losses caused by Tower's intentional acts. (R & R, 12.) Plaintiffs' objection is overruled.

2. *Severability and fortuitous acts according to the October 30, 2007 Order.*

Plaintiffs also argue the Report incorrectly states that this Court previously determined that "there is no severability of interests as between insured" under Part II of the All Risk coverage, and that "under the policy language as the Court has already construed it, intentional acts by Tower are not fortuitous for purposes of recovery by Fleet and Highland." Although this finding is not necessary to the Court's reasoning, which relies on the plain meaning of the Policy, the Court does agree with the Magistrate Judge on

this issue and overrules Plaintiffs' objection.

In its Order dated October 30, 2007, the Court found that "[b]y its plain terms, this provision provides each individual insured the same protection as if each insured had procured the policy separately, except with respect to the All Risks coverage." (Order, 16.) The Court also noted that Defendants' interpretation of the Cross Liability Provision—"there is no severability of interests as between insureds" under Parts II and IV of the Policy—conformed to the Court's reading of the Provision's "plain terms" as applied to the situation at issue here, where an intentional act by one coinsured caused the damage forming the basis of another coinsured's claim. The Court sees no reason to reconsider or alter that ruling. Although the Endorsement may suggest some severability of interests in certain cases of breach, nothing stated in the Endorsement suggests that in the case presented here—where a coinsured seeks to collect first-party coverage under Part II of the Policy on damage caused by the intentional acts of another co-insured—the co-insureds interests are several.

The Court therefore agrees with the Magistrate Judge's reading of the October 30, 2007 Order. Plaintiffs' objection is overruled.

3. *Recovery of parts removed after the Trustee's order.*

Plaintiffs also object to the R & R on the ground that its recommendations preclude recovery on parts removed after June 14, 2000, the date upon which the Tower Air bankruptcy trustee ordered Tower's employees to stop cannibalizing plaintiffs' equipment. The R & R recommends that summary judgment be granted with respect to claims seeking recovery on parts whose removal was documented in Tower's

records, and denied with respect to claims seeking recovery on parts whose removal was undocumented. This recommendation is premised on the notion that Plaintiffs may not recover for any loss caused by Tower's intentional acts. However, Plaintiffs argue that there are some parts whose removal was documented but nonetheless "accidental."

Plaintiffs argue that because on June 14, 2000 the Tower Air bankruptcy trustee issued a directive to all Tower Air employees instructing them not to remove parts from the Plaintiffs' equipment without the trustee's express written approval, no removal of parts after that date should be viewed as, "the authorized or intentional actions of Tower Air." (Pl. Obj'n, 17.) Defendants argue that the trustee directive did not "alter the fact that Tower continued its practice of removing parts from certain aircraft and engines to install on others as a matter of routine and thus retained the value of those parts." (Def. Resp. 3.)

The Court agrees with Plaintiffs that summary judgment should not be granted so as to preclude claims based on the removal of parts that occurred after the date of the trustee's directive. For those parts, there remains a disputed issue as to whether their removal was an "accidental" loss or an "intentional" act perpetrated by the co-insured, Tower, and whether these losses qualify as Physical Damage under the Policy. It may be possible, for example, to show that because certain parts were removed by airline personnel in a manner incapable of imputing intent to Tower itself, any loss resulting from those removals was "accidental" as far as *all* the coinsureds were concerned.

Plaintiffs have presented a disputed issue of material fact as to whether they should be precluded from recovery based on the documented removal of parts after issuance of the directive by the bankruptcy trustee. Therefore, Plaintiffs' objection on this issue is sustained, and Defendants' motion as to summary judgment concerning this recovery is DENIED.

## B. Defendant's Objections

Defendants object to the portion of the R & R recommending that Defendants' motion for summary judgment be denied with respect to Plaintiffs' claims on those aircraft and engine parts whose removal was not documented by Tower. Although Defendants dispute the Magistrate Judge's findings on several points, their arguments can be stated as two objections: 1) that Plaintiffs have not submitted evidence that would allow a reasonable trier of fact to determine that anyone other than authorized Tower personnel removed parts from Plaintiffs' Equipment (Def. Obj'n, 2); and 2) that the evidence Plaintiffs have submitted does no more than prove that the claimed losses should be excluded under the Policy's "mysterious disappearances" provision. Although both of these objection were presented and considered by the Magistrate Judge, the Court will nonetheless briefly review the issues.

### 1. Plaintiffs' Evidence

The submissions by both parties demonstrate that Tower's general practice was to document all removal of parts from aircrafts and engines. Tower's Director of Maintenance and its C.O.O. each testified that precise records were kept charting the removal of parts for use on other airplanes. (See Plaint. Append. Ex. D, pp. 18:17–10:4, 67; 18–68:8; Ex. E, p. 36.) Other evidence demonstrated that undocumented part removals would constitute a violation of Federal Aviation Regulations. (Plaint. Append. Ex. F, pp. 81, 103.) From these submissions, as well as others, a reasonable trier of fact could believe that where no record was made of a part's

removal, that part was removed without authorization or intent on Tower's behalf.

The Court therefore adopts and affirms the Magistrate Judge's recommendation that summary judgment should be DE-NIED as to those claims seeking recovery on parts whose removal was not document-ed. Defendants' objection is overruled.

## 2. *Exclusion J*

■■ Defendants argue that the evidence submitted by Plaintiffs does not raise an inference that losses covered by the Policy occurred, but instead raises only the inference that what losses there were constituted "mysterious disappearances," excluded from coverage by Exclusion (J). First, as this Court has noted in the past and notes again now, the operation of Exclusion (J), the "mysterious disappear-ances" provision, involves disputed issues of material fact—for example, the effect of authorization/nonauthorization of parts removal; the meaning of "spares" as used in Part IV of the Policy—that preclude summary judgment. Second, even if the Court were to accept at this stage that Exclusion (J) presumptively applied wherever there was an undocumented part removal, Plain-tiffs would still have raised a disputed issue of material fact in demonstrating that the parts may have been stolen. Under New York insurance law, policy provi-sions excluding coverage for "unexplained loss" or "mysterious disappearance" do not exclude coverage where the loss has been caused by theft. *Gurfein Bros., Inc. v. Hanover Ins., Co.,* 248 A.D.2d 227, 229–30, 670 N.Y.S.2d 423 (N.Y.A.D. 1 Dept.1998). Exclusion may be avoided even where the evidence does not establish the identity of the thief. See *Stella Jewelry Mfg., Inc. v. Naviga Belgamar Through Penem Intern. Inc.,* 885 F.Supp. 84, 86 (S.D.N.Y.1995); *Gurfein Bros., Inc.,* 248 A.D.2d at 229, 670 N.Y.S.2d 423. Based on the records kept by Tower, as well as the location of the parts and the practices regarding their removal, there is at least a triable issue as to whether parts were in fact stolen, either by unauthorized personnel (without Tow-er's knowledge) or third parties. In sum, the Court agrees with the Magistrate Judge that the applicability and application of Exclusion (J) involve multiples issues of disputed fact, and therefore summary judgment on this issue is inappropriate. Defendants' objection is overruled.

## CONCLUSION

Defendants' motion for summary judg-ment is GRANTED as to those claims seeking recovery on parts whose removal was documented and occurred prior to is-suance of the June 14, 2000 bankruptcy trustee directive. Defendants' motion for summary judgment is DENIED as to those claims seeking recovery on parts whose removal was documented and oc-curred subsequent to the issuance of the June 14, 2000 bankruptcy trustee directive. Defendants' motion for summary judgment is DENIED as to those claims seeking recovery on parts whose removal was not documented.

The parties are directed to submit a joint pretrial order to the Court on or before August 31,2009.

**SO ORDERED.**

*REPORT AND RECOMMENDATION*

JAMES C. FRANCIS IV, United States Magistrate Judge.

TO THE HONORABLE BARBARA S. JONES, U.S.D.J:

These consolidated actions involve a dis-pute over the extent of coverage of an insurance policy issued to Tower Air Inc. ("Tower"), a commercial airline based out of John F. Kennedy Airport in New York. Plaintiff Fleet Business Credit, LLC ("Fleet") leased certain airframes and en-gines to Tower, while plaintiff Highland

Capital Management L.P. ("Highland") provided Tower with financing for others. Many parts were subsequently removed from this equipment, sometimes for use in other Tower aircraft. Tower has since gone bankrupt. The plaintiffs are now suing the defendants, Tower's insurance carriers,[1] to recover the value of the missing parts. The defendants have moved for summary judgment. For the reasons set forth below, I recommend that the defendants' motion be granted in part and denied in part.

*Background*

A. *Facts*

Fleet is a Delaware corporation with its principal place of business in Illinois (Defendants' Rule 56.1 Statement of Material Facts as to Which There is No Genuine Issue To Be Tried ("Def. Facts"), ¶ 1; Order dated Oct. 30, 2007 ("10/30/07 Order") at 2), while Highland is a Delaware limited partnership with its principal place of business in Texas. (Def. Facts, ¶ 2; Highland Amended Complaint, ¶ 2; 10/30/07 Order at 3).

Beginning in October 1996, Fleet purchased from and leased back to Tower three Boeing 747 airframes and eight engines. (Def. Facts, ¶ 3; 10/30/07 Order at 2). On August 21, 1997, Highland financed Tower's purchase of one Boeing 747–100 airframe and seven engines. (Def. Facts, ¶ 4; 10/30/07 Order at 3). Highland retained an interest in the airframe and engines as collateral to secure payment of the loan. (10/30/07 Order at 3). Both Fleet and Highland were named as "Additional Insureds" under Tower's Airline Hull, Spares and Liability Policy. (Def. Facts, ¶ 5; 10/30/07 Order at 3).

Tower filed for voluntary bankruptcy under Chapter 11 on February 29, 2000. (Def. Facts, ¶ 8; 10/30/07 Order at 4). Later investigation uncovered that component parts from the aircraft and engines provided by Fleet and Highland had been removed around the time of the bankruptcy filing, rendering the aircraft inoperable. (Def. Facts, ¶¶ 9–17, 25; 10/30/07 Order at 4). Tower's records show that many of the parts were installed in other Tower aircraft in order to repair those aircraft and allow them to continue flying. (Def. Facts, ¶¶ 46–47; Plaintiff's Local Rule 56.1(B) & (C) Statement of Disputed Facts ("Pl. Facts") at 5). Other parts, however, remain unaccounted for. (Defendants' Memorandum of Law in Support of Motion for Summary Judgement ("Def. Memo.") at 15; Def. Facts, ¶ 47; Pl. Facts at 3–5). In the spring of 2000, Fleet and Highland submitted claims for the missing parts to Tower's insurance broker, but those claims were denied. (Def. Facts, ¶ 29–30; 10/30/07 Order at 4).

On May 5, 2000, a bankruptcy trustee was appointed to manage Tower's affairs. (Deposition of Charles A. Stanziale dated Aug. 11, 2003 ("Stanziale Dep."), attached as Exh. 12 to Declaration of Katherine B. Posner dated Feb. 6, 2009 ("Posner Decl."), at 10; Def. Facts, ¶ 22). On June 14, 2000, the trustee issued a directive to Tower's employees ordering them to stop taking parts from the Fleet and Highland equipment. (E-mail from Terry Dennison dated June 14, 2000, attached as Exh. G of Appendix to Plaintiffs' Memorandum in Opposition to Defendants' Second Summary Judgment Motion and Plaintiffs' Rule 56.1 Statement ("Pl. Appx.")). The trustee also posted signs containing the

---

**1.** The remaining defendants in this case are Global Aerospace Underwriting Managers Limited; Marine Insurance Company Limited; Commercial Union; CGU International Insurance PLC (named in the caption as "GU International"); Mitsui Sumitomo Insurance Company Limited (named in the caption as "Mitsui Marine and Fire"); Münchener Rückversicherungs–Gesellschaft ("named in the caption as Munich Re"); Eagle Star Insurance Company Limited; and Tokio Marine and Fire Insurance Company Limited.

directive in the Tower workplace. (Sign, attached as Exh. G. of Pl. Appx.). However, the plaintiffs admit that some parts were removed from the equipment after the order was issued. (Pl. Facts at 19).

### B. *The Policy*

Coverage in this case is controlled by the wording of Tower's Airline Hull and Liability Insurance policy for the period May 1, 1998 to May 1, 1999 (the "1998–1999 Policy"), which is comprised of four subsections.[2] Part II provides "all risks" insurance to cover risks of damage to or loss of aircraft, and Part IV covers those risks for spare "engines, parts, [and] equipment". (1998–1999 Policy, attached as Exh. 1 to Posner Decl., at 15–18, 20–21).[3] The policy also contains a "Cross Liability" clause, which provides that:

> This insurance shall provide the same protection to each Insured hereunder as would have been available had this policy been issued separately to each Insured, except that in no event shall the Insurers [sic] total liability exceed the Limits of Liability set forth in the Declarations. This provision shall not operate or apply to any claim for loss of or damage to property insured under Part II or Part IV of this Policy.

(1998–1999 Policy at 27).

### C. *Procedural History*

The plaintiffs filed their respective cases separately in 2002. In November 2005,

---

2. The Court previously determined this to be the relevant language governing the current dispute. (10/30/07 Order at 6–10).

3. Parts I and III provide liability coverage for Tower for personal injury and property damage claims by third persons, and are irrelevant here. (1998–1999 Policy at 5–14, 19–20).

4. In connection with their motion, the defendants argue that the plaintiff's Statement of Facts does not conform to Local Civil

---

the defendants moved for summary judgment in both cases, but these motions were denied, and the two cases were later consolidated. Based on subsequent opinions in this case, the defendants now move for summary judgment for a second time.[4]

### Discussion

### A. *Summary Judgment Standard*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 285–86 (2d Cir.2002); *Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co.*, 189 F.3d 208, 214 (2d Cir.1999). The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party then must come forward with "specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e). Where the non-movant fails to make "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

---

Rule 56.1, since it only specifically admits or denies seven of the paragraphs from the defendants' Statement of Facts. (Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment ("Def. Reply Memo.") at 3–5). The defendants request that the Court deem the other forty paragraphs of their Statement of Facts to be admitted. (Def. Reply Memo. at 3–5). I decline to do so. While the plaintiffs' format made it more difficult to ascertain which facts were or were not contested, I was ultimately able to accomplish that task.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vann v. City of New York*, 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505 (citation omitted), and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Id.* at 249–50, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

In addition, the court's review of the record is limited to facts that would be admissible at trial. Rule 56(e) states that affidavits in support of or against summary judgment shall "set out facts that would be admissible in evidence." Fed. R.Civ.P. 56(e). "Accordingly, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir.1997).

### B. *Burdens of Proof in Insurance Law*

■ As previously indicated, the instant case involves an all risks insurance policy. (1998–1999 Policy at 15–18, 20–21). Such a policy covers all fortuitous losses other than those subject to a specific exception. *International Multifoods Corp. v. Commercial Union Insurance Co.*, 309 F.3d 76, 83 (2d Cir.2002) (*quoting Ingersoll Milling Machine Co. v. M/V Bodena*,

829 F.2d 293, 307–08 (2d Cir.1987)). Under an all risks policy, the insured has the burden of proving that a fortuitous loss occurred. *In re Balfour MacLaine International Ltd.*, 85 F.3d 68, 77 (2d Cir.1996). However, the insured need not prove the cause of the loss. *Id.* at 77–78. Once the loss is shown, the burden shifts to the insurer to prove that the loss falls under an exception to the policy's coverage. *Id.* at 78. In general, ambiguities in an insurance policy are construed against the insurer. *Ingersoll Milling Machine Co.*, 829 F.2d at 306.

### C. *Severability of Insurance Interests*

The parties agree that Tower removed many of the parts at issue from Fleet and Highland planes or engines for use in its other aircraft. The parties dispute, however, whether Fleet and Highland, as additional insureds on Tower's insurance policy, can recover for Tower's intentional conduct.

■ The policy at issue covered "all risks of loss" to Tower's aircraft and spares. (1998–1999 Policy at 15, 20). Such "all risks" insurance policies cover the risk of all losses not specifically excluded from coverage, as long as the losses are "fortuitous." *A & B Enterprises, Inc. v. Hartford Insurance Co.*, 198 A.D.2d 389, 389–90, 604 N.Y.S.2d 166, 167–68 (2d Dep't 1993). Under the fortuity doctrine, a policyholder cannot obtain insurance for losses it "knows of, planned, intended or is aware are substantially certain to occur." *National Union Fire Insurance Co. v. Stroh Co.*, 265 F.3d 97, 106 (2d Cir.2001) (citation and quotation marks omitted). Thus, Tower clearly would not recover under its policy for its own intentional conduct.

However, the parties dispute from whose point of view fortuitousness is measured when considering claims by Fleet and Highland. The defendants argue that the

rights of the insureds are joint under the 1998–1999 Policy, and intentional conduct by Tower therefore bars recovery by Fleet or Highland. (Def. Memo. at 10–11). By contrast, the plaintiffs maintain that their interests in Tower's policy are several, and that the innocent coinsured doctrine allows them to recover for events which are fortuitous as to them, regardless of the conduct of any other coinsured. (Response in Opposition to Defendants' Motion for Summary Judgment ("Pl. Memo.") at 5–9). In other words, the plaintiffs claim that since they were unaware Tower was taking parts from their planes and engines, Tower's actions were a fortuitous loss from their perspective, and one for which they should be allowed to recover.

New York law is not entirely clear as to whether an innocent insured can collect when a coinsured's conduct would prevent that coinsured from recovering.[5] In a series of fire insurance cases, the New York courts have discussed three approaches courts have taken in similar situations. The traditional approach is to look to the insureds' interests in the property; if two insureds own the property jointly, then their interests in the insurance are joint and one cannot recover for the other's intentional conduct. This approach, however, has been discounted as outdated. *See, e.g., Reed v. Federal Insurance Co.,* 71 N.Y.2d 581, 587–88, 528 N.Y.S.2d 355, 358, 523 N.E.2d 480 (1988) (explaining that courts have increasingly rejected this "potential[ly] unfair[ ] rule").

The "new dominant rule" emphasizes the contractual terms of the insurance policy. *Reed,* 71 N.Y.2d at 588, 528 N.Y.S.2d at 358 (quoting *Ryan v. MFA Mutual Insurance Co.,* 610 S.W.2d 428, 434 (Tenn. Ct.App.1980)). If the plain language of the policy specifies whether the insureds'

interests are joint or several, then that controls. If it is ambiguous, the policy's language is read against the insurer and the interests are considered to be several.

Finally, courts have recognized an "equitable" approach under which the interests are deemed to be several, allowing the innocent party to recover, regardless of the status of the property interests. For instance, a New York State Supreme Court case applied the equitable approach when a husband, apparently angered when his wife obtained a protective order against him, poured gasoline throughout their marital home, resulting in a fire. The court found that the "significant factor" in determining whether the wife could recover was "the responsibility or liability for the fraud." *Winter v. Aetna Casualty & Surety Co.,* 96 Misc.2d 497, 501, 409 N.Y.S.2d 85, 88 (Sup.Ct. Nassau Co.1978) (quoting *Howell v. Ohio Casualty Insurance Co.,* 130 N.J.Super. 350, 327 A.2d 240, 242 (N.J.1974)). The Court of Appeals has summarized the equitable approach as allowing an innocent coinsured to recover when, "as a matter of fairness and equity, . . . the independent wrongdoing of one insured should not bar recovery as to the coinsured under a policy that names and is intended to protect" that coinsured. *Reed,* 71 N.Y.2d at 588, 528 N.Y.S.2d at 358.

It is not evident whether the equitable approach is intended to provide a default rule applicable only in cases lacking specific and clear contract language or, rather, if it can override contractual terms. While the *Winter* case stated that the equitable approach supercedes both property interests and contractual language, 96 Misc.2d at 501, 409 N.Y.S.2d at 88, the Court of Appeals and the Appellate Division, Second Department have only characterized

---

**5.** The Court previously ruled that New York law governs the current dispute. (Order dat-

ed Nov. 1, 2005 at 4–5).

the equitable approach as overriding property interests. *Reed,* 71 N.Y.2d at 588, 528 N.Y.S.2d at 358; *Krupp v. Aetna Life & Casualty Co.,* 103 A.D.2d 252, 260, 479 N.Y.S.2d 992, 998 (2d Dep't 1984). I am not aware however, of any New York case in which the equitable approach was applied in contradiction of unambiguous language the nature of the insureds' interests. Indeed, *Winter* is the sole New York case to rely primarily upon the equitable approach.

Here, in October 2007, the Honorable Barbara S. Jones, U.S.D.J. found that under the Cross Liability provision of the policy, "each individual insured [has] the same protection as if each insured had procured the policy separately, except with respect to the All Risks coverage." (10/30/07 Order at 16). In other words, she determined that "there is no severability of interests as between insured" under Parts II and IV of the insurance policy, the sections relevant here. (10/30/07 Order at 16). Thus, under the policy language as the Court has already construed it, intentional acts by Tower are not fortuitous for purposes of recovery by Fleet and Highland.

Moreover, even assuming that the equitable approach could indeed override specific contractual language, the equities do not support doing so in the current case. Where parties have specifically agreed on whether the interests of multiple insured were joint or several, it would generally be inequitable to override that agreement, which was presumably a factor in determining whether coverage would be extended at all and, if so, at what price. Further, unlike in *Winter,* where the insured were private homeowners, the current case involves large, highly sophisticated parties who presumably conducted arms-length negotiations to allocate risks and calculate premiums. They are thus properly bound to the language of their policy.

### D. *Unaccounted-for Parts*

The fate of a smaller number of the disputed airplane parts is unknown. These parts are missing from Fleet and Highland aircraft or engines, but Tower's records do not show who removed them or for what reason. The defendants contend that the deterioration of Tower's record-keeping practices, which occurred when the company reduced staff while under financial stress, created gaps in Tower's records. (Def. Facts, ¶ 46). They reason that the unaccounted for parts were removed by Tower for reuse, but simply not properly documented. (Def. Facts, ¶¶ 46–47). The plaintiffs, on the other hand, infer that if there are no records showing that Tower intentionally removed a part for reuse in another aircraft, then this did not occur. Accordingly, they argue that unaccounted for parts were either stolen or lost in a fortuitous manner. (Pl. Memo. at 16).

A reasonable trier of fact could find either theory to be plausible based on the evidence. The defendants' contention that a break-down in record-keeping explains the failure to document Tower's re-purposing of these parts is supported by one witness's testimony at deposition that Tower "lost control of" its system of record keeping over time. (Deposition of Terence O. Dennison dated Oct. 9, 2003, attached as Exh. 10 to Posner Decl., at 34). A number of former Tower employees also noted that they had no knowledge of any parts being removed by anyone other than authorized Tower employees. (Deposition of Al Monti dated Jan. 12, 2004 ("Monti Dep."), attached as Exh. 6 to Posner Decl., at 78; Deposition of Richard Acquavita dated Oct. 8, 2003, attached as Exh. 11 to Posner Decl., at 52; Stanziale Dep. at 100, 154). Witnesses also testified in general terms that when parts were removed from Fleet and Highland equipment, they were

regularly taken in order to repair other Tower aircraft. (Monti Dep. at 36–37; Isakson Dep. at 290–91; Deposition of William Isakson dated March 31, 2004 ("Pl. Isakson Dep."), attached as Exh. C of Pl. Appx., at 196). Moreover, specialized skills and tools were required to remove nearly all the parts at issue, making theft or other fortuitous loss less likely. (Deposition of William Isakson dated March 31, 2004 ("Isakson Dep."), attached as Exh. 2 to Posner Decl., at 297–98). Finally, Tower never filed any police report or claim of theft for the unaccounted-for parts. (Def. Facts, ¶ 40). On the other hand, Federal Aviation Administration ("FAA") regulations require airlines to record when they remove parts from an airplane, and where those parts are next installed. (Transcript of Bankruptcy Proceeding dated July 24, 2000, attached as Exh. 16 to Posner Decl., at 15–16; Deposition of Ronald I. Hannula dated Oct. 8, 2003 ("Hannula Dep."), attached as Exh. F of Pl. Appx., at 81, 103). Furthermore, Tower had an internal policy of documenting all authorized removal of parts. (Deposition of Richard Acquavita dated Oct. 8, 2003, attached as Exh. D to Pl. Appx., at 17–19, 68; Hannula Dep. at 103). Failing to record the removal of a part and to track its reinstallation would have violated both FAA rules and company policy. It also would have created the risk that Tower would lose track of the age of parts being installed in functional aircraft, creating a safety hazard. Thus, the absence of records of removal can be found to indicate that, in fact, the unaccounted-for parts were not removed by Tower employees for use in other aircraft. In addition, at least one engine at issue that was stripped of 90–95% of its parts was stored in the open on a runway at John F. Kennedy International Airport, increasing the likelihood of theft or other loss. (Inspection and Audit of Seven Pratt & Whitney JT9D–7A Engines operated by Tower Air

dated Feb. 2000, attached as Exh. 8 to Posner Decl., at FLT 055088).

The plaintiff here carries the burden of showing a fortuitous loss, but that does not require showing specifically how the loss occurred. *In re Balfour MacLaine International Ltd.*, 85 F.3d at 77–78. In light of the evidence described above, a reasonable fact-finder could infer either that the unaccounted-for parts had been removed by Tower or that they were stolen or otherwise lost without Tower's involvement. Therefore, summary judgment should be denied as to the claims relating to these parts.

E. *Spares Clause*

Of the parts whose fates are unknown, presumably some were removed from Fleet and Highland aircraft and some from engines. The defendants argue that, when parts were removed from the aircraft and not installed elsewhere, they became "spares" covered by Part IV of the 1998–1999 Policy (Def. Memo. at 17), and that those parts that came from engines not installed in planes were "spares" to begin with. (Def. Memo. at 18). Under Part IV, Section 2(j) of the policy, the "mysterious disappearance or unexplained loss or shortage disclosed upon taking inventory" of spares is excluded from coverage. (1998–1999 Policy at 20). Under Part IV, Section 1, spares includes "spare engines, parts, or equipment." (1998–1999 Policy at 20).

The plaintiffs counter that this provision does not apply when parts were taken by third parties, and they argue that the evidence in this case indicates that some parts were likely stolen. (Pl. Memo. at 18). In their view, theft is not an "unexplained loss" or "mysterious disappearance." (Pl. Memo. at 19). They also point out that, under New York law, the insurer

has the burden of showing that an exception applies. (Pl. Memo. at 18).

When similar policy wording has been considered in prior New York insurance law cases, courts have conducted fact-specific inquiries to determine if an exclusion applies. For example, in *Maurice Goldman & Sons, Inc. v. Hanover Insurance Co.*, 80 N.Y.2d 986, 592 N.Y.S.2d 645, 607 N.E.2d 792 (1992), the Court of Appeals affirmed a finding that an identical clause excluded coverage where the president of a jewelry company on a business trip "noticed that a bag containing jewelry was missing from his personal effects" and "was unable to say how or where the loss occurred." *Id.* at 987, 592 N.Y.S.2d at 646. In *Stella Jewelry Manufacturing, Inc. v. Naviga Belgamar*, 885 F.Supp. 84 (S.D.N.Y.1995), the president of another jewelry company placed a bag of jewelry at his feet while he made space in a car trunk. *Id.* at 84. When he went to pick it up "about 10 seconds" later, the bag was gone. *Id.* Presented with the same exclusion terms in the relevant insurance policy, the court found that "mysterious disappearance" is "interpreted as a factual circumstance in which a reasonable person could not infer based on the evidence presented the manner in which the reported loss occurred," and that the facts here "bespeak only of theft." *Id.* at 85–86. The court thus found the exclusion inapplicable. *Id.* at 86. New York courts have found that an "insurer's summary judgment motion will be denied if plaintiff presents evidence of a series of circumstances concerning the loss which, if accepted by the triers of fact, might well lead to the inference that a theft had occurred." *Gurfein Brothers, Inc. v. Hanover Insurance Co.*, 248 A.D.2d 227, 229–30, 670 N.Y.S.2d 423, 425–26 (1st Dep't 1998) (cita-

tion and quotation marks omitted). "That the exact manner of the theft" remains "a mystery [does] not render the loss itself mysterious or unexplained." *Id.* at 230, 670 N.Y.S.2d at 426.

Here, an issue of fact remains regarding how and why some of the missing parts were removed from Fleet and Highland aircraft and engines. While it could be inferred, as the defendants argue, that they were removed intentionally by Tower or that their disappearance is entirely mysterious, the evidence also allows an inference that the missing parts were, in fact, stolen. The plaintiffs cannot say who stole the parts, but if evidence is sufficient to reasonably infer theft, coverage is not precluded under Exclusion (j) simply because the thieves' identity is unknown. *See Stella Jewelry Manufacturing, Inc.*, 885 F.Supp. at 86. Here, sufficient evidence exists for a reasonable finder of fact to accept either explanation. Thus, this issue cannot be determined on summary judgment.[6]

*Conclusion*

For the reasons set forth above, I recommend that the defendants' motion for summary judgment be granted with regard to missing parts that Tower's records explicitly indicate were taken by Tower for reuse in other aircraft. However, I recommend that the motion be denied with respect to missing parts whose removal was not indicated in Tower's documentation. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of

---

**6.** In addition, it is questionable whether parts stolen directly from an aircraft fall within the definition of "spares."

the Honorable Barbara S. Jones, Room 1920, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Dated: New York, New York.

June 18, 2009.